Stephen R. Thomas, ISB No. 2326
Lee Radford, ISB No. 5719
MOFFATT, THOMAS, BARRETT, ROCK &
      FIELDS, CHARTERED
101 S. Capitol Blvd., 10th Floor
Post Office Box 829
Boise, Idaho 83701
Telephone (208) 345-2000
Facsimile (208) 385-5384
srt@moffatt.com
klr@moffatt.com
23748.0001

Steven J. Yatvin
Owen H. Smith
BARACK FERRAZZANO KIRSCHBAUM &
      NAGELBERG LLP
200 W. Madison St., Suite 3900
Chicago, Illinois 60606
Telephone (312) 984-3100
Facsimile (312) 984-3150
steve.yatvin@bfkn.com
owen.smith@bfkn.com

Attorneys for Defendants Volkswagen of
America, Inc. and Audi of America, Inc.

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| B.A. WACKERLI, CO., a corporation, <br><br>                Plaintiff, <br><br> vs. <br><br> VOLKSWAGEN OF AMERICA, INC., a corporation, & AUDI OF AMERICA, INC., a corporation, <br><br>                Defendants. | Case No. 4:12-cv-00373-BLW <br><br> **VOLKSWAGEN OF AMERICA, INC. AND AUDI OF AMERICA, INC.'S MEMORANDUM IN OPPOSITION TO B.A. WACKERLI'S MOTION FOR A STAY PENDING JUDICIAL REVIEW** |

# TABLE OF CONTENTS

**A.** The Parties.................................................................................................................. 2

**B.** Wackerli Files for Bankruptcy. ............................................................................... 2

    **1.** Wackerli Agrees to Displace Volkswagen and Audi from the Shared
    Facility.................................................................................................................. 3

    **2.** Wackerli Moves to Assume the Volkswagen and Audi Dealer Agreements
    and, VWoA and AoA Object. ............................................................................. 3

    **3.** Wackerli, to Resolve Its Dispute with VWoA and AoA, Agrees to
    Construct a New Facility for Volkswagen and Audi by March 31, 2012, at
    the Latest. ............................................................................................................ 3

**C.** Wackerli Breaches its Facility Commitment. .......................................................... 4

**D.** Proceedings Before ITD............................................................................................ 5

    **1.** The Preliminary Orders...................................................................................... 5

    **2.** Wackerli Petitions the Hearing Officer to Reconsider Conclusions of Law
    17, 18, and 19. .................................................................................................... 7

    **3.** Wackerli seeks review with the Director of ITD. .............................................. 9

    **4.** Summary of Judicial Proceedings. ..................................................................... 9

**A.** The Court has Jurisdiction Over This Entire Case................................................... 11

    **1.** Diversity Jurisdiction Exists as Between Wackerli and VWoA/AoA. ................ 11

    **2.** The Court Has Jurisdiction to Review ITD's Final Decision. ............................ 11

**B.** Wackerli Cannot Establish a Right to a Stay. .......................................................... 12

    **1.** Wackerli Cannot Show Serious Questions Going to the Merits of Its
    Petition for Judicial Review. ............................................................................... 13

        **a.** There are no serious questions going to the merits of Wackerli's
        procedural complaints. 14

        **b.** There are no serious questions going to the merits of the objections
        Wackerli made to ITD's Conclusions of Law in its Petition for
        Reconsideration and its Petition for Review. 15

    **2.** Wackerli Is Not Likely to Suffer Irreparable Harm. ............................................. 17

Client:2506574.1

**3.** The Balance of Equities Favors VWoA and AoA, Not Wackerli ......................... 19

**4.** The Public Interest Does Not Warrant Preliminary Injunctive Relief in Favor of Wackerli ................................................................................................... 19

CONCLUSION ............................................................................................................. 20

Client:2506574.1

# TABLE OF AUTHORITIES

**CASES**

*BNSF Ry. Co. v. O'Dea,*
    572 F.3d 785 (9th Cir. 2009)........................................................................ 11, 12

*Center for Food Safety v. Vilsack,*
    636 F.3d 1166 (9th Cir. 2011)...................................................................... 12, 13

*City of Boise v. Bench Sewer Dist.,*
    116 Idaho 25, 773 P.2d 642 (1989)..................................................................... 17

*City of Chicago v. Int'l Coll. of Surgeons,*
    522 U.S. 156 (1997) ............................................................................................. 11

*Darling's v. General Motors Corp.,*
    2006 U.S. Dist. LEXIS 23224 (D. Me. Apr. 21, 2006)...................................... 16

*Dep't of Fair Empt. and Hous. v. Lucent Techs.,*
    642 F.3d 728 (9th Cir. 2011).............................................................................. 11

*Developmental Svcs. Network v. Douglas,*
    666 F.3d 540 (9th Cir. 2011).............................................................................. 13

*Dotster, Inc. v. Internet Corp. for Assigned Names & Numbers,*
    296 F. Supp. 2d 1159 (C.D. Cal. 2003).............................................................. 18

*Foreign Motors, Inc. v. Audi of Am., Inc.,*
    755 F. Supp. 30 (D. Mass. 1991) ....................................................................... 17

*Gowan Co., LLC v. Aceto Agric. Chems.,*
    No. 09-1124, 2009 U.S. Dist. LEXIS 63633 (D. Ariz. July 10, 2009) ............... 17

*Humane Soc'y of the U.S. v. Gutierrez,*
    558 F.3d 896 (9th Cir. 2009).......................................................................... 12, 15

*Jaguar Land Rover N.A., LLC v. Manhattan Imported Cars, Inc.,*
    738 F. Supp. 2d 640 (D. Md. 2010) ................................................................... 16

*Jakoubek v. Fortis Benefits Ins. Co.,*
    301 F. Supp. 2d 1045 (D. Neb. 2003) ................................................................ 11

*Lafayette Beverage Distribs., Inc. v. Anheuser-Busch, Inc.,*
    545 F. Supp. 1137 (N.D. Ind. 1982).................................................................. 18

*Nebeker v. Piper Aircraft Corp.,*
    113 Idaho 609, 747 P.2d 18 (1987).................................................................... 15

Client:2506574.1

*P.J. Grady, Inc. v. G.M. Corp.*,
    472 F. Supp. 35 (E.D.N.Y. 1979) ................................................................. 18

*Rebecca Irene Fisheries, LLC v. Gutierrez*,
    No. 05-0891, 2005 U.S. Dist. LEXIS 38711 (W.D. Wash. Dec. 14, 2005) ........................... 12

*Reinhardt v. Mont. Human Rights Bureau*,
    2010 U.S. Dist. LEXIS 133668 (D. Mont. Dec. 17, 2010) ..................................... 11

*Roth v. Davis*,
    231 F.2d 681 (9th Cir. 1956) ................................................................. 11

*Salyer v. SK Foods, L.P.*,
    No. 11-2987, 2012 U.S. Dist. LEXIS 12018 (E.D. Cal. Feb. 1, 2012) .......................... 15

*Sterling v. Bloom*,
    111 Idaho 211, 723 P.2d 755 (1986) ........................................................... 15

*Stevenson v. Blaine Cnty.*,
    134 Idaho 756 (Idaho 2000) ................................................................... 15

*Sullivan v. Quality Loan Svc. Corp.*,
    No. 1:10-CV-436, 2011 U.S. Dist. LEXIS 3603 (D. Id. Jan. 11, 2011) ......................... 18

*Unity Svc. Coordination, Inc. v. Armstrong*,
    No. CV-09-639, 2010 U.S. Dist. LEXIS 26621 (D. Id. Mar. 20, 2010) ...................... 13, 12

*Wheeler v. Dep't of Health & Welfare*,
    147 Idaho 257 (Idaho 2009) ................................................................... 14

## STATUTES

5 U.S.C. § 705 ..................................................................................... 12

28 U.S.C. § 1332 ................................................................................... 11

Idaho Code § 49-1613(2)(j) ................................................................... 6, 7, 16

Idaho Code §49-1614(6) ......................................................................... 5, 15

Idaho Code §49-1617(1) ......................................................................... 5, 15

Idaho Code § 67-5274 .......................................................................... 10, 12

iv

# INTRODUCTION

The question before the Court is whether a Volkswagen and Audi dealer, B.A. Wackerli, Co. ("Wackerli"), that has been found by the Idaho Transportation Department ("ITD") to have breached a material and reasonable provision of its franchise agreements with Volkswagen of America, Inc. ("VWoA") and Audi of America, Inc. ("AoA"), should be allowed to represent the Volkswagen and Audi brands pending the Court's review of the ITD's Final Order. Based on the stringent standards for obtaining a preliminary injunction, coupled with the deferential standards of judicial review of an agency decision, the answer is no.

The task for Wackerli is particularly heavy here because the process before ITD was objectively fair and the ITD Hearing Officer's orders, which became the final orders of ITD, were thorough and well-reasoned. In view of this, Wackerli cannot establish serious questions going to the merits of its petition for judicial review, the threshold issue for any request for injunctive relief, including stays of agency orders. Nor can Wackerli make a showing on any of the other elements for injunctive relief – Wackerli has an adequate damages remedy available should it prevail on its petition for judicial review, the equities balance in VWoA and AoA's favor, and the public interest would not be served by keeping a dealer in business that has been found to have breached a material and reasonable term of its franchise agreements. This Court, which has subject matter jurisdiction over this entire case, including Wackerli's petition for judicial review, should accordingly deny Wackerli's request for a stay.

# BACKGROUND

## A.    The Parties.

VWoA is an operating unit of Volkswagen Group of America, Inc. and is the U.S. importer and distributor of Volkswagen vehicles, parts, and accessories.  AoA is the U.S. importer and distributor of Audi vehicles, and is responsible for the sale of Audi vehicles, parts and accessories.  AoA is also an operating unit of Volkswagen Group of America, Inc.

Wackerli is a private dealer group in Idaho Falls, Idaho, where Wackerli operates a Volkswagen and Audi dealership at 1400 North Holmes Ave., a Subaru dealership at 2250 North Holmes Ave., and a GMC-Buick-Cadillac dealership at 1363 North Holmes Ave.  *See* Exhibit A to the Declaration of Steven R. Thomas ("Thomas Decl.") (Tr. 429:7-25).  Before 2010 Wackerli operated Volkswagen, Audi, and Subaru in a shared facility located at 2250 North Holmes Ave., where Wackerli currently operates an exclusive Subaru dealership.

Wackerli's right to represent the Volkswagen and Audi brands arise from Wackerli's separate dealer agreements with VWoA and AoA.  *See* Thomas Decl., Exs. B, C.  Those agreements contain various addenda that are incorporated into the Dealer Agreements, including ownership addenda and dealership premises addenda.  Wackerli's Dealer Agreements also include facility addenda that became part of Wackerli's Dealer Agreements pursuant to the Settlement Agreement entered into in Wackerli's bankruptcy proceedings.  *Id.*, Ex. D at 2, ¶ 5.

## B.    Wackerli Files for Bankruptcy.

Wackerli filed for bankruptcy protection under Chapter 11 of the United States Bankruptcy Code in February 2009.  The key events in the Bankruptcy Court were:

1.     *Wackerli Agrees to Displace Volkswagen and Audi from the Shared Facility.*

Subaru sought to terminate its dealer agreement with Wackerli in June 2009.  *Id.*, Ex. E.
Subaru ultimately decided against terminating Wackerli, choosing instead to enter into a
September 2009 settlement agreement (the "Subaru Settlement Agreement").  *Id.*, Ex. F.

Pursuant to the Subaru Settlement Agreement, Subaru agreed not to terminate Wackerli
in exchange for: 1) Wackerli agreeing to displace Volkswagen and Audi from the shared facility;
and 2) Wackerli agreeing to renovate the shared facility into an exclusive Subaru facility meeting
Subaru's Signature Facility Image Program Standards.  *Id.*, Ex. F at Ex. A (Subaru Settlement
Agreement), p. 2 of 5).

2.     *Wackerli Moves to Assume the Volkswagen and Audi Dealer Agreements and,
       VWoA and AoA Object.*

Wackerli moved the bankruptcy court to authorize it to assume the Volkswagen and Audi
Dealer Agreements and to relocate the Volkswagen and Audi dealerships to its used car store at
1400 North Holmes Avenue.  *See id.*, Ex. G.  VWoA and AoA objected to Wackerli's motion.
*See id.*, Ex. G at 3, 6.  Among the concerns was that the proposed facilities at 1400 N. Holmes
Avenue, which Wackerli had used as a used car facility, were inferior to the existing facilities at
2250 North Holmes Avenue.  *Id.*, Ex. A (Tr. 53:4-54:17, 278:22-279:13).  As VWoA's Anthony
Ray summarized, "[i]t's a location that, all other things being equal, we would have never
approved."  *Id.*, Ex. A (Tr. 279:6-13).

3.     *Wackerli, to Resolve Its Dispute with VWoA and AoA, Agrees to Construct a
       New Facility for Volkswagen and Audi by March 31, 2012, at the Latest.*

VWoA and AoA, despite their reservations, ultimately agreed to Wackerli assuming the
Dealer Agreements and to a temporary relocation to 1400 North Holmes, which allowed
Wackerli to avoid breaching its settlement with Subaru.  In exchange for VWoA and AoA

agreeing to allow the temporary relocation and to Wackerli assuming the Dealer Agreements, Wackerli agreed to construct a new Dual-Branded dealership facility for Volkswagen and Audi that would meet both brands' facility standards. *See id.* Ex. D at 1, E-1, F-1; *see also id.*, Ex. A (Tr. 58:2-59:7, 279:6-281:9). To memorialize their agreement, the parties executed an April 28, 2010 Settlement Agreement that included Facility Addenda that became part of the Dealer Agreements. *Id.*, Ex. D at 2, ¶ 5. Wackerli agreed in the Facility Addenda that the new facility would be completed by March 31, 2012 at the latest. *Id.* The parties also underscored the temporary nature of the relocation to the used car store: "in no event shall debtor be permitted to carry out Volkswagen or Audi operations at the Temporary Sales Facility or the Temporary Service Facility after March 31, 2012." *Id.*, Ex. D at Recitals ¶ E, ¶ 4.

Wackerli also agreed that failing to complete its new Volkswagen and Audi facility by March 31, 2012 would be good cause for termination. *Id.*, Ex. D (Audi Facility Addendum, Ex. 1 at F-2, ¶3, last sentence, ¶6, first sentence, Volkswagen Facility Addendum, Ex. 1 at E-2, ¶5, first sentence). The parties likewise represented the same to the Bankruptcy Court. *Id.*, Ex. H (Outline of Settlement ¶¶ II, III).

## C.    Wackerli Breaches its Facility Commitment.

Wackerli made no meaningful progress after signing the Settlement Agreement because it was focused on completing construction of its Subaru facility. *See id.*, Ex. A (Tr. 97:1-98:3); *id.*, Ex. I (6/23/10 Kennard e-mail). Wackerli then stopped work on its facility project in the Fall of 2010 because, as Steven Wackerli testified in an affidavit filed in bankruptcy court in May 2011, Wackerli believed that its vehicle inventory "was [in]sufficient to support the ongoing expenses associated with the new facility development and construction." *Id.*, Ex. J, ¶ 15. Wackerli ultimately re-engaged the facility process, but by the time it did so it was too late to complete

construction by March 31, 2012. Indeed, by January 2012 Wackerli had not advanced its facility project beyond the preliminary design phase. *See id.*, Ex. A (Tr. 420:22-422:14). Wackerli had therefore breached its facility commitment to VWoA and AoA. In view of this, on January 17, 2012, VWoA and AoA sent Wackerli notices of termination. *Id.*, Exs. K, L.

## D.    Proceedings Before ITD.

On February 2, 2012 Wackerli filed protest actions with ITD. VWoA and AoA responded to the protest actions on March 7, 2012. Pursuant to Idaho Code § 49-1617(3), VWoA and AoA's response papers triggered ITD's statutory obligation to render a determination on Wackerli's protest actions within 120 days, or July 5, 2012.

In view of the statutory deadline, ITD promptly assigned the protest actions to a hearing officer, Stephen Bywater, who conducted a hearing on April 25-26, 2012. The parties filed post-hearing briefs and on June 8, 2012, Hearing Officer Bywater issued Preliminary Orders finding in favor of VWoA and AoA.

### 1.    *The Preliminary Orders.*

The Preliminary Orders are each over 20 pages and contain findings of fact and conclusions of law that are too detailed for meaningful summary. Throughout the Preliminary Orders, however, the Hearing Officer made several ultimate findings and conclusions:

- "The evidence shows that Wackerli made no meaningful progress on the design or construction of a new VW/Audi facility for several months after signing the Settlement Agreement." Thomas Decl., Exs. M & N at FOF 20, record cite omitted).

- "By January 2012 Wackerli had not advanced its facility project beyond the preliminary design phase. Wackerli, had not yet developed final construction drawings, obtained building permits, or broken ground on a new facility. By January 2012 it was not possible for Wackerli to finish its facility project by March 31, 2012. Wackerli had therefor breached its facility commitment." *Id.*, Exs. M & N at FOF 32 (record cite omitted);

- "Pursuant to Idaho Code §49-1617(1), when a protest is filed, the Department has two issues to decide: 1) whether there is good cause to permit termination of a dealer

agreement; and 2) whether the manufacturer failed to act in good faith. Under Idaho Code §49-1614(6) a manufacturer seeking to terminate a franchise agreement based upon breach has the burden of proving that the dealer failed to comply with a provision of the franchise agreement that is both a reasonable provision and one that is of material significance to the franchise agreement relationship." *Id.*, Exs. M & N at COL 7;

- "Wackerli's agreement that good cause would exist in the event of a breach of its facility commitment constituted a material part of the consideration that VWoA and AoA bargained for in negotiating the Settlement Agreement. Under Idaho law, courts (and thus executive branch agencies acting in a quasi-judicial role) are not permitted to read bargained-for consideration out of an agreement." *Id.*, Exs. M & N at COL 9;

- "Independent of Wackerli's specific agreements on reasonableness, the evidence established that the facility commitments were a reasonable provision of the franchise agreements." *Id.*, Exs. M & N at COL 10;

- "Independent of Wackerli's specific agreements on materiality, the facility commitments were also of material significance to the franchise relationship." *Id.*, Exs. M & N at COL 11;

- "[VWoA and AoA] ha[ve] met [their] burden of establishing good cause under both statutory definitions cited above for the termination of the dealer franchise agreement with Wackerli based upon Wackerli's failure to comply with a provision of the franchise agreement which is both reasonable and of material significance to the franchise agreement relationship." *Id.*, Exs. M & N at COL 12;

- "The evidence does not support a finding of lack of good faith on the part of VWoA or AoA in the vehicle allocation procedures and policies they followed after the execution of the Settlement Agreement nor does the evidence support a finding that VWoA or AoA's vehicle allocation policies in performance of the Settlement Agreement inhibited or rendered impractical or impossible the performance of the Settlement Agreement by Wackerli." *Id.*, Exs. M & N at COL 19;

- "The evidence does not support a finding of lack of good faith on the part of VWoA or AoA in their dealings with Wackerli regarding the design or construction of the new dual-branded dealership facility after Wackerli re-started the process in August of 2011 nor does it support a finding that VWoA or AoA's actions or requirements in the facility design or construction approval process inhibited or rendered impractical or impossible the performance of the Settlement Agreement by Wackerli." *Id.*, Exs. M & N at COL 20.

2. ***Wackerli Petitions the Hearing Officer to Reconsider Conclusions of Law 17, 18, and 19.***

On June 21, 2012, Wackerli petitioned the Hearing Officer to reconsider Conclusions of Law 17, 18, and 19. *See id.*, Ex. O. On June 25, 2012, the Hearing Officer issued orders denying Wackerli's petition. *See id.*, Exs. P & Q.

In Conclusion of Law 17, the Hearing Officer found that Idaho Code § 49-1613(2)(j), which prohibits a manufacturer from "requiring" or "coercing" a dealer to construct a new facility unless it provides a written supply guarantee to the dealer, did not apply to this case because VWoA and AoA did not require or coerce Wackerli into building a facility, but negotiated for a facility commitment in an arm's-length transaction. Wackerli argued in its petition that: 1) VWoA and AoA did not provide consideration for Wackerli's facility commitment; and 2) enforcing a facility obligation negotiated at arms-length is tantamount to "requiring" a dealer to build a new facility, making it a violation of Idaho Code § 49-1613(2)(j). Thomas Decl., Ex. O at 2-5. The Hearing Officer rejected these arguments, ultimately finding that: "The evidence presented in this matter does not support a finding that Wackerli was compelled, required or coerced into making the facility commitment. To the contrary, the evidence establishes that Wackerli negotiated for, and agreed to, the terms of the settlement agreement." *Id.*, Exs. P & Q at 3.

In Conclusion of Law 18, the Hearing Officer found that "The evidence does not support a finding that VWoA and AoA had an obligation to or failed to provide vehicles in the proper numbers, colors and mix of models to make construction of the new facility by Wackerli economically viable." Wackerli accepted that the evidence presented at the ITD hearing did not support a finding that VWoA and AoA failed to provide Wackerli vehicles in the proper numbers, colors and mix of models to make construction of the new facility by Wackerli

economically viable, but took issue with the Hearing Officer's conclusion that VWoA and AoA did not have the obligation to do so. Wackerli argued that such an obligation exists under Article 8(4) of each brands' Dealer Agreement Standard Provisions. The Hearing Officer rejected Wackerli's argument, finding:

> Conclusion of Law 18, contrary to Wackerli's argument, does not conclude that AoA has "no obligation whatsoever to Wackerli," but that AoA did not have an obligation to provide Wackerli with "vehicles in the proper numbers, colors and mix of models to make construction of the new facility by Wackerli economically viable." Wackerli argues that Mr. Wareing's testimony with regard to an increase in vehicle allocation by Subaru after the new Subaru facility was completed was evidence of a correlation between a dealership expansion or construction of a facility and the manufacturer's commitment to allocate vehicles to support the expansion or new construction. However, no evidence was presented of a written guarantee of vehicle allocation by Subaru. Wackerli's argument is not supported by the evidence and is unpersuasive.

In Conclusion of Law 19, the Hearing Officer found that:

> The evidence does not support a finding of lack of good faith on the part of VWoA or AoA in the vehicle allocation procedures and policies they followed after execution of the Settlement Agreement nor does the evidence support a finding that VWoA or AoA's vehicle allocation policies in performance of the Settlement Agreement inhibited or rendered impractical or impossible the performance of the Settlement Agreement by Wackerli.

Wackerli did not directly challenge Conclusion of Law 19, but instead argued that the Hearing Officer should have decided whether constructing a new facility was rendered impossible because VWoA and AoA did not guarantee that they would allocate Wackerli sufficient vehicles to sustain its facility investment. Thomas Decl., Ex. O at 7. The Hearing Officer rejected this argument, finding that Wackerli would have had to negotiate for such a commitment in the Settlement Agreement, which it did not do.

### 3. *Wackerli seeks review with the Director of ITD.*

On Friday, June 29, 2012, Wackerli petitioned the Director of ITD for review of the Preliminary Orders. *See id.*, Ex. R. Wackerli's petition for review was less than two pages in length and requested in merely conclusory fashion "that the Director review the Hearing Officer's conclusions of law, including, but not limited to, Conclusions of Law 17, 18, and 19." *Id.*, Ex. R at 2. Wackerli also requested that the Director review the portions of the Hearing Officer's Decision on Reconsideration addressing Wackerli's burden of proof on certain disputed issues. *Id.*

On July 12, 2012, Wackerli filed an emergency motion with the Director seeking "an immediate administrative stay preventing Audi and VW from terminating" the Dealer Agreements. *See id.*, Ex. S at 1. The Director immediately granted Wackerli's motion to stay termination of the Dealer Agreements "until such time as the Director shall be able to fully review the Wackerli appeal and issue a decision in due course." *Id.*, Ex. T at 1.

The following day, July 13, 2012, the Director issued an Order of Dismissal and Dissolution of Stay, adopting the Preliminary Orders as the final order of the Department (the "Final Order") and dissolving the stay. *See id.*, Ex. U at 2. Upon issuance of the Final Order, the administrative proceedings came to close.

### 4. *Summary of Judicial Proceedings.*

On July 12, 2012, the same day that Wackerli submitted its emergency motion to the Director for an immediate administrative stay of termination, Wackerli also filed a complaint and *ex parte* motion for temporary restraining order in Idaho state court. The complaint asserted two claims: (i) "Preliminary Injunction/Temporary Restraining Order," seeking equitable relief prohibiting termination of the Dealer Agreements until the Director issued a final order in the

administrative proceeding (Count I); and (ii) breach of the Settlement Agreement, seeking damages for VWoA and AoA's alleged failure to allocate a sufficient number of vehicles to Wackerli in light of Wackerli's facility commitment (Count II). (*See* Complt., at ¶¶ 23-33). Wackerli's *ex parte* motion for a temporary restraining order sought to "preserve the status quo until ITD issues its decision reviewing the hearing officer's findings." (Pl.'s Mem. Supp. of Mot. for TRO, at 5). The state court entered the TRO on the same day. The TRO provided that it would expire on July 24, 2012 unless extended by further order of the court. (July 12, 2012 Temporary Restraining Order, at 2).

On the following Monday, July 16, 2012, VWoA and AoA moved to dissolve the TRO because the administrative process had concluded. (*See* Mot. to Dissolve TRO). That morning, Wackerli filed an amended complaint adding a new claim for judicial review of the Final Order. Wackerli then, shortly after the hearing, filed a motion for leave to file a proposed Second Amended Complaint. (*See* Mot. for Leave to Amend). The Second Amended Complaint named ITD as a new defendant.

On July 20, 2012, the state court denied VWoA and AoA's motion to dissolve the TRO. (*See* July 20, 2012 Order). VWoA and AoA subsequently removed the action to this Court. (*See* Notice of Removal, Dkt. No. 1). On July 24, 2012, this Court, by agreement of the parties, entered an order extending the TRO until Friday, August 3, 2012.

Because, at the time of removal, the state court had not ruled on Wackerli's motion to amend the Amended Complaint, the operative pleading currently before this Court is the Amended Complaint. After VWoA and AoA removed this action, however, Wackerli initiated a new state court action by filing a one-count complaint against VWoA, AoA and the ITD seeking judicial review of the Final Order, as well as a motion for a new TRO and a stay pursuant to

Idaho Code § 67-5274.  *See* Thomas Decl., Ex. V.  At the time of this filing, Wackerli's second state court action remains pending.

## ARGUMENT

### A.  The Court has Jurisdiction Over This Entire Case.

#### 1.  *Diversity Jurisdiction Exists as Between Wackerli and VWoA/AoA.*

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a), based on diversity of citizenship.  Wackerli is a citizen of Idaho because it is an Idaho corporation with its principal place of business in Idaho.  28 U.S.C. § 1332(c)(1).  VWoA and AoA are citizens of New Jersey, where they are incorporated, and Virginia, where they have their principal place of business.  *Id.*  Wackerli does not dispute that the amount in controversy exceeds the statutory minimum.[1]

#### 2.  *The Court Has Jurisdiction to Review ITD's Final Decision.*

The Ninth Circuit recently held that federal courts retain diversity jurisdiction over actions involving the review of a final decision of a state administrative agency.  *BNSF Ry. Co. v. O'Dea*, 572 F.3d 785 (9th Cir. 2009).  In *BNSF*, the Ninth Circuit reversed a district court's dismissal of an action for lack of jurisdiction that sought "on-the-record" (rather than *de novo*) review of a decision of the Montana Human Rights Commission.  *Id.* at 787.  Although prior

---

[1] VWoA and AoA note that, if ITD were added as a defendant, the Court would still have jurisdiction because ITD is not a real party in interest.  *See Roth v. Davis*, 231 F.2d 681, 683 (9th Cir. 1956); *Dep't of Fair Empt. and Hous. v. Lucent Techs.*, 642 F.3d 728, 737 (9th Cir. 2011); *Jakoubek v. Fortis Benefits Ins. Co.*, 301 F. Supp. 2d 1045, 1051 (D. Neb. 2003); *and see Reinhardt v. Mont. Human Rights Bureau*, 2010 U.S. Dist. LEXIS 133668, at *7 (D. Mont. Dec. 17, 2010) (holding that where the "essential nature of the proceeding" is a dispute between private citizens, and the state agency's only involvement is as the neutral party who adjudicated that dispute, the state agency is not a real party in interest and cannot destroy diversity jurisdiction).

Ninth Circuit precedent had held that federal courts lacked jurisdiction to conduct "on-the-record" review of decisions by state administrative agencies, the court in *BNSF* determined that the Supreme Court effectively overruled that precedent in *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156 (1997). *See* BNSF, 572 F.3d at 791. Accordingly, under *City of Chicago* and *BNSF*, this Court has jurisdiction over Wackerli's petition for "on-the-record" judicial review of the Final Order.[2]

**B.** **Wackerli Cannot Establish a Right to a Stay.**

The Idaho Administrative Procedure Act, Idaho Code § 67-5274, provides that "The filing of the petition for review does not itself stay the effectiveness or enforcement of the agency action. The agency may grant, or the reviewing court may order, a stay upon appropriate terms." VWoA and AoA have found no Idaho authority providing standards for determining when a stay is appropriate. In view of the similarity between Idaho Code § 67-5274 and 5 U.S.C. § 705, which governs review under the federal Administrative Procedure Act, VWoA and AoA submit that the Court should apply the basic preliminary injunction standard, which is the standard that the federal courts apply when deciding whether to issue a stay. *See Humane Soc'y of the U.S. v. Gutierrez*, 558 F.3d 896, 896 (9th Cir. 2009); *Rebecca Irene Fisheries, LLC v. Gutierrez*, No. 05-0891, 2005 U.S. Dist. LEXIS 38711, at *1 (W.D. Wash. Dec. 14, 2005).

---

[2] The Court had inquired about the Bankruptcy Court's jurisdiction over Wackerli's breach of contract claim, in which Wackerli asserts that VWoA and AoA did not "provid[e] proper inventory to Wackerli to make construction of a dual franchise facility economically viable." (Am. Cmplt. ¶31). VWoA and AoA note that, on May 27, 2011, Wackerli filed a motion with the Bankruptcy Court asserting a similar theory. See Ex. W. The Bankruptcy Court dismissed that motion, finding that it did not have jurisdiction to hear a claim arising under the Settlement Agreement or state law generally. *See* Ex. X, transcript of August 9, 2011 Bankruptcy Court hearing, at 28-29. VWoA and AoA maintain that the Bankruptcy Court's finding that it did not have jurisdiction to review a claim for breach of the Settlement Agreement is correct.

A plaintiff seeking injunctive relief must establish: (1) that they are likely to succeed on the merits; (2) that they are likely to suffer irreparable harm if an injunction is not issued; (3) that the balance of equities tips in their favor; and (4) that an injunction is in the public interest. *Center for Food Safety v. Vilsack*, 636 F.3d 1166, 1172 (9th Cir. 2011); *Armstrong* 2010 U.S. Dist. LEXIS 26621, at *7-8.

The Ninth Circuit applies this four-part standard on a "sliding scale," permitting a plaintiff to obtain an injunction "where he has only shown 'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff . . . so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Developmental Svcs. Network v. Douglas*, 666 F.3d 540, 544 (9th Cir. 2011) (citation omitted). "[I]f a plaintiff fails to show that he has some chance on the merits," however, "that ends the matter." *Id.* Likewise, a plaintiff "must establish that irreparable harm is *likely*, not just possible, in order to obtain a preliminary injunction." *Center for Food Safety*, 636 F.3d at 1172.

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Unity Svc. Coordination, Inc. v. Armstrong*, No. CV-09-639, 2010 U.S. Dist. LEXIS 26621, at *8 (D. Id. Mar. 20, 2010) (Winmill, J.) (citation omitted). Here, Wackerli cannot meet its burden to establish the necessary elements to be awarded preliminary injunctive relief. Wackerli's application for a stay of ITD's Final Orders should therefore be denied.

1.  ***Wackerli Cannot Show Serious Questions Going to the Merits of Its Petition for Judicial Review.***

Wackerli cannot meet the "serious questions going to the merits" test or the "likely to succeed on the merits test." The circumscribed and deferential standards for judicial review of the ITD's Final Order are simply too high and the Hearing Officer's reasoning too sound for Wackerli to succeed on this threshold element.

Under the Idaho Administrative Procedure Act ("IDAPA"), judicial review of a final agency order is both narrow in scope and deferential in application. A reviewing court "must affirm the Department's action . . . unless the court determines that the agency's findings, inferences, conclusions or decisions are: (a) in violation of constitutional or statutory provisions; (b) in excess of the statutory authority of the agency; (c) made upon unlawful procedure; (d) not supported by substantial evidence on the record as a whole; or (e) arbitrary, capricious, or an abuse of discretion." *Wheeler v. Dep't of Health & Welfare*, 147 Idaho 257, 260 (Idaho 2009) (quoting Idaho Code § 67-5279(3)).

> **a. There are no serious questions going to the merits of Wackerli's procedural complaints.**

Wackerli does not identify in its pleadings any specific grounds to reverse ITD. Instead, Wackerli asserts that "[t]he ITD final order should be reversed" on the following grounds: (i) "It violates Wackerli's constitutional rights under due process"; (ii) "Exceeds the statutory authority of the agency"; (iii) "Was made under an unlawful procedure"; and (iv) "Constitutes arbitrary and capricious conduct on the part of the agency, or is an abuse of discretion." (Am. Complt., at 5-6). The complaint that Wackerli filed in its second state court action contains substantially similar allegations.

Wackerli cannot demonstrate serious questions going to the merits on any of these asserted grounds for reversal. ITD appointed a Hearing Officer, the Hearing Officer conducted a 2-day hearing, and then, after full briefing, the Hearing Officer rendered thorough and reasoned Preliminary Orders. ITD Director Brian Ness then adopted the Hearing Officer's Preliminary Orders on July 13, 2012, after recognizing that the 120-day deadline for rendering a final determination of Wackerli's protests had passed. Wackerli cannot, on this record, reasonably dispute that ITD adhered to the procedures set forth in the Dealer Act and IDAPA.

**b.** **There are no serious questions going to the merits of the objections Wackerli made to ITD's Conclusions of Law in its Petition for Reconsideration and its Petition for Review.**

In its Petition for Reconsideration and Petition for Review, Wackerli objected to Conclusions of Law 13, 17, 18, and 19. Wackerli cannot establish serious questions going to the merits of any of its objections to these Conclusions of Law, particularly in view of the deference afforded administrative agency decisions. *See, e.g.*, *Stevenson v. Blaine Cnty.*, 134 Idaho 756, 759 (Idaho 2000) (citing Idaho Code § 67-5279(1) and holding that "the agency's factual determinations are binding on the reviewing court, even where there is conflicting evidence before the agency, so long as the determinations are supported by competent evidence in the record"); *see also Humane Soc'y of the U.S.*, 558 F.3d at 896-97; *Salyer v. SK Foods, L.P.*, No. 11-2987, 2012 U.S. Dist. LEXIS 12018, at *8 (E.D. Cal. Feb. 1, 2012).

*Conclusion of Law 13.*

In its Petition for Review filed with Director Ness, Wackerli challenged the Hearing Officer's conclusion that Wackerli bore the burden to prove that VWoA and AoA failed to act in good faith. The Hearing Officer originally concluded this in Conclusion of Law 13 in his Preliminary Orders.

The Hearing Officer's placement of the burden is correct as a matter of law. Pursuant to Idaho Code § 49-1617(1), when a protest is filed, the Department has two issues to decide: 1) whether there is good cause to permit termination of a dealer agreement; and 2) whether the manufacturer failed to act in good faith. The statute expressly states that the manufacturer has the burden of proof on good cause even though, as a respondent to the protest, it stands in the shoes of a defendant. *See* Idaho Code § 49-1614(6). In view of this express assignment of the good cause burden, the burden to prove a failure of good faith is, as a matter of statutory

construction, on the dealer. *See Nebeker v. Piper Aircraft Corp.*, 113 Idaho 609, 614, 747 P.2d 18, 23 (1987) ("In *Sterling v. Bloom*, 111 Idaho 211, 723 P.2d 755 (1986), this Court held that where the legislature expressly states one thing it is deemed to have excluded another, *expressio unis est exclusio alterius*").

### Conclusion of Law 17.

In Conclusion of Law 17, the Hearing Officer found that Idaho Code § 49-1613(2)(j) did not apply to this case because the evidence did not support a finding that VWoA and AoA did not require or coerce Wackerli into building a new facility. VWoA and AoA submit that this is in substance a factual finding that the Court must give great deference to. Even if viewed as a legal conclusion, it is unassailable.

There is no "serious question" that VWoA and AoA did not require Wackerli to build a facility, but rather negotiated for the facility commitment in exchange for valuable consideration. This is not only the logical construction of the word "require," but the one applied by the several courts that have reviewed dealer complaints that a manufacture had required them to do something. *See, e.g., Darling's v. General Motors Corp.*, 2006 U.S. Dist. LEXIS 23224 (D. Me. Apr. 21, 2006); *Jaguar Land Rover N.A., LLC v. Manhattan Imported Cars, Inc.*, 738 F. Supp. 2d 640, 652-53 (D. Md. 2010).

### Conclusions of Law 18 and 19.

Wackerli argued with respect to Conclusion of Law 18 that the Hearing Officer erred by finding that VWoA and AoA did not have an obligation to provide Wackerli vehicles in the proper numbers, colors and mix of models to make construction of the new facility by Wackerli economically viable. Wackerli did not, however, challenge the Hearing Officer's factual finding on this issue. There is accordingly no serious question going to the merits, both because does not

challenge the factual finding and because the Hearing Officer, in his Decisions on Petition for Reconsideration, demonstrated why there is no serious question going to the merits as a legal matter. (*See supra* Background § G.2; Exs. P & Q).

On Conclusion of Law 19, Wackerli, in its Petition for Reconsideration, argued that VWoA and AoA, by not guarantying sufficient allocation to sustain Wackerli's investment in a new facility, made construction of that facility impracticable. The Hearing Officer rejected Wackerli's argument, finding, among other things, that if Wackerli had wanted an allocation guaranty in connection with its facility commitment, it had to negotiate for that in the Settlement Agreement. Thomas Decl., Exs. P & Q at 4-5. The Hearing Officer's reasoning comports with Idaho law on impracticability, which follows the Restatement rule:

> *Discharge by Supervening Impracticability.* Where, after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged, unless the language or the circumstances indicate the contrary.

*City of Boise v. Bench Sewer Dist.,* 116 Idaho 25, 29, 773 P.2d 642, 646 (1989).

## 2. *Wackerli Is Not Likely to Suffer Irreparable Harm.*

Wackerli cannot show that it is likely to suffer irreparable harm. To satisfy this requirement, the party seeking injunctive relief must "demonstrate that irreparable harm is real, imminent and significant – not merely speculative or potential – with admissible evidence and a clear likelihood of success." *Gowan Co., LLC v. Aceto Agric. Chems.*, No. 09-1124, 2009 U.S. Dist. LEXIS 63633, at *12-13 (D. Ariz. July 10, 2009). Harm that can be remedied through an award of monetary damages is not irreparable harm. *Id.* at *13, 15. Accordingly, courts in the Ninth Circuit have repeatedly rejected conclusory and speculative claims of irreparable harm to business, reputation, and good will. *See, e.g.*, *id.* at *16.

In the franchise context, courts hold that a franchisee's loss of one of several franchises does not constitute a "loss of business" sufficient to establish irreparable harm. *See Foreign Motors, Inc. v. Audi of Am., Inc.*, 755 F. Supp. 30, 31-33 (D. Mass. 1991) ("[T]he loss of the Audi franchise may result in reduced revenue, but [the dealer] will not go out of business" because it "will still be able to deal" in other brands, and "money damages would suffice to compensate for any loss of additional revenue."); *see also P.J. Grady, Inc. v. G.M. Corp.*, 472 F. Supp. 35, 37 (E.D.N.Y. 1979). In such circumstances, the franchisee bears a heavy burden to demonstrate that potential losses "would be of such a magnitude that their entire business is threatened with potential ruin." *Dotster, Inc. v. Internet Corp. for Assigned Names & Numbers*, 296 F. Supp. 2d 1159, 1164 n.3 (C.D. Cal. 2003); *see also Lafayette Beverage Distribs., Inc. v. Anheuser-Busch, Inc.*, 545 F. Supp. 1137, 1151 (N.D. Ind. 1982) (no irreparable injury arising from termination of beer distributorship where Anheuser-Busch products constituted only 28% of beverage sales).

Wackerli cannot establish likely irreparable harm because termination of its Volkswagen and Audi franchises will not threaten its separate Buick, GMC, Cadillac, and Subaru businesses with potential ruin. Moreover, in the unlikely event Wackerli prevails on its petition for judicial review and ultimately establishes that VWoA and AoA lacked good cause for termination, any loss of revenue that Wackerli suffers as a result of termination can be compensated in money damages.[3]

---

[3] In any event, loss of a business or property "does not justify the granting of injunctive relief absent a showing . . . that [plaintiff] is likely to succeed on the merits." *Sullivan v. Quality Loan Svc. Corp.*, No. 1:10-CV-436, 2011 U.S. Dist. LEXIS 3603, at *19 (D. Id. Jan. 11, 2011) (Winmill, J.). As explained above, Wackerli has failed to demonstrate that it is likely to succeed on the merits, and therefore is not entitled to stay regardless of the harm it believes it will suffer.

3.      *The Balance of Equities Favors VWoA and AoA, Not Wackerli.*

The ITD orders capture the real inequity of this case, which is that Wackerli accepted valuable consideration from VWoA and AoA in the Settlement Agreement and then, once they got what they wanted, proceeded to breach their facility commitment:

> In consideration of Wackerli's facility commitment VWoA and AoA approved Wackerli's temporary relocation into an inferior facility. Wackerli had placed itself in a double bind by making the agreement with Subaru. VWoA and AoA, despite not being notified or consulted by Wackerli at the outset, agreed to let Wackerli out of its self-created bind and accept the relocation of their dealerships to an inferior facility for a temporary period. They agreed to do this despite their concerns that the temporary facility was 'a step backwards' to an older facility that was not appropriate for operations long-term. Wackerli's facility commitments were a reasonable inducement and constituted valuable consideration for VWoA and AoA's agreements to accept the inferior location on a temporary basis.

Thomas Decl., Exs. M & N at COL 10.

It is inequitable to VWoA and AoA to require them to continue to do business with a dealer that operates in a sub-standard and currently unauthorized facility. Requiring VWoA and AoA to continue in business with Wackerli after August 3, 2012 is particularly inequitable because Wackerli induced VWoA and AoA into consenting to its proposed relocation to its used car store by promising to construct a new facility by March 31, 2012 and then, once Wackerli got its consideration, it proceeded to breach its facility commitment to VWoA and AoA. The equities accordingly tip in favor of VWoA and AoA.

4.      *The Public Interest Does Not Warrant Preliminary*
        *Injunctive Relief in Favor of Wackerli.*

There is no public interest in keeping a dealer in business that has been found by an agency of the state of Idaho to have breached a material and reasonable provision of its franchise

agreement. Indeed, quite the opposite, "The public interest is served by the assurance that valid contracts will be enforced." *Adees Corp.*, 2004 U.S. Dist. LEXIS 27329, at *5.

The public interest in having valid contracts enforced is, if anything, greater for settlement agreements. Here, Wackerli breached a facility commitment that became part of its Volkswagen and Audi Dealer Agreements through the Settlement Agreement entered into in connection with Wackerli's bankruptcy proceeding. The proceedings before ITD and the TRO that is currently in place have prevented VWoA and AoA from obtaining what they bargained for – the right to terminate Wackerli for failing to complete construction of its facility by March 31, 2012. Every day that goes by with the TRO in place increases the likelihood that, next time, manufacturers in VWoA and AoA's position will decline to settle. The public has great interest in the settlement of disputes and the Court should not dis-incentivize manufacturers from settling dealer disputes by requiring VWoA and AoA to continue to do business with a dealer that has breached a reasonable and material provision of its franchise agreements.

## CONCLUSION

For the reasons stated in this Memorandum, VWoA and AoA's Responses to Wackerli's Protests, and at the hearing of these actions, the Department should enter an order permitting VWoA and AoA to terminate Wackerli's Volkswagen and Audi Dealer Agreements.

DATED this 30th day of July, 2012.

MOFFATT, THOMAS, BARRETT, ROCK & FIELDS, CHARTERED

By_____
Stephen R. Thomas – Of the Firm
Attorneys for Defendants Volkswagen of
America, Inc. and Audi of America, Inc.

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 30th day of July, 2012, I filed the foregoing **VOLKSWAGEN OF AMERICA, INC. AND AUDI OF AMERICA, INC.'S MEMORANDUM IN OPPOSITION TO B.A. WACKERLI'S MOTION FOR A STAY PENDING JUDICIAL REVIEW** electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

**Michael D. Gaffney**
gaffney@beardstclair.com
*Attorneys for Plaintiff B.A. Wackerli, Co.*

**Steven J. Yatvin**
steve.yatvin@bfkn.com
*Attorneys for Defendants Volkswagen of America, Inc. and Audi of America, Inc.*

**Owen H. Smith**
owen.smith@bfkn.com
*Attorneys for Defendants Volkswagen of America, Inc. and Audi of America, Inc.*

_____
Stephen R. Thomas