EXHIBIT E

Daniel C. Green, ISB # 3213
RACINE, OLSON, NYE, BUDGE
 & BAILEY, CHARTERED
P.O. Box 1391/Center Plaza
Pocatello, Idaho 83204-1391
Telephone: (208) 232-6101
Facsimile: (208) 232-6109
Email: dan@racinelaw.net

Donald A. Workman, DC # 443778
Email dworkman@bakerlaw.com
BAKER HOSTETLER LLP
1050 Connecticut Avenue, N.W.
Suite 1100
Washington, D.C. 20036
Telephone: (202) 861-1602
Facsimile: (202) 861-1783
Email: dworkman@bakerlaw.com

Counsel for Subaru of America, Inc.

UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| In re: | Bankruptcy No. 09-40202-JKP |
| B.A. Wackerli Co., Inc., | Chapter 11 |
| Debtor. | |

**VERIFIED MOTION OF SUBARU OF AMERICA, INC. FOR (I) RELIEF FROM AUTOMATIC STAY, (II) IN THE ALTERNATIVE, TO COMPEL DEBTOR TO IMMEDIATELY ASSUME OR REJECT THE AGREEMENT, OR (III) IN THE ALTERNATIVE, TO COMPEL THE DEBTOR TO PROVIDE ADEQUATE ASSURANCE OF FUTURE PERFORMANCE**

Subaru of America, Inc. ("Subaru") hereby moves (the "Motion") this Court for entry of an order modifying the automatic stay to permit Subaru to terminate its "Agreement" (as defined herein) with the above-captioned debtor (the "Debtor"). In the alternative, Subaru seeks an order compelling the Debtor to assume or reject the Agreement on an accelerated basis. In the event that the Court determines that accelerated assumption or rejection of the Agreement is inappropriate, until such time as the Debtor assumes or rejects the Agreement, Subaru requests

102798250v7

EXHIBIT
105

adequate protection and adequate assurance of the Debtor's future performance, in the form as set forth herein. Subaru states as follows in support of the Motion:

## PROCEDURAL POSTURE

1. On or about February 20, 2009 (the "Petition Date"), B.A. Wackerli Co., Inc. ("Debtor" or "Wackerli") commenced the reorganization case (the "Bankruptcy Case") by filing a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"), in the United States Bankruptcy Court for the District of Idaho (the "Court'). The Debtor continues to operate its business and manage its assets as debtor-in-possession pursuant to section 1107 and 1108 of the Bankruptcy Code.

2. No trustee or examiner has been appointed in the Bankruptcy Case. The Debtor remains a debtor-in-possession.

3. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue in this Court is proper pursuant to 28 U.S.C. § 1409.

4. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Subaru seeks relief pursuant to Bankruptcy Codes §§ 361, 362, 363, 365 and Bankruptcy Rule 4001(a).

## BACKGROUND

5. On or about September 5, 2008, Subaru and Wackerli entered into the Subaru Dealer Agreement (the "Agreement"), with a term beginning on November 1, 2008 and ending on October 31, 2009. The Subaru Dealer Agreement Standard Provisions dated as of May 11, 2000 ("Standard Provisions") were incorporated by reference into the Agreement. Copies of the Agreement and Standard Provisions are attached hereto as Exhibit "A" and incorporated herein by reference.

6. The Agreement authorized the Debtor to be the Subaru Dealer with an Area of Responsibility as defined in Section 2.5 of the Standard Provisions. The Agreement also contained specific floor plan requirements. Paragraph 12 provides:

2

> Dealer agrees to make arrangements for, and to maintain throughout the term of this Agreement, a committed floor plan line of credit in an amount adequate to fulfill the requirements set forth in the applicable Minimum Standards and adequate to finance Dealer's anticipated inventory of Vehicles. Dealer hereby represents that it now possesses a committed floor plan line of credit, from a financial institution approved by Distributor, available exclusively for Subaru operations, in the current required amount of $1,000,000.

7. Further provision was included for floor plan requirements. Section 12.4 of the Standard Provisions provides:

> **Payment.** Dealer must furnish to Distributor, upon demand, documentation that it possesses a committed floor plan line of credit from a financial institution approved by, and in a form acceptable to, Distributor. Such floor plan line of credit must be available exclusively for new Subaru Vehicles and must provide for, and be fully available for, payment of Vehicles upon presentation of a draft for payment. Dealer may, prior to presentment of a draft by Distributor under the floor plan line of credit, elect to make timely payment to Distributor by means of cash or a check if such method of payment is then acceptable to Distributor. At the time Dealer places each purchase order for goods other than Vehicles, Dealer must make payment to Distributor of the full purchase price by means of cash or a certified or bank cashier's check, unless Distributor states from time to time in writing that other terms of payment will be accepted from Dealer.

8. The Agreement also authorized early termination upon the occurrence of certain events. Paragraph 14 provides:

> Dealer may terminate this Agreement prior to the expiration date by giving at least sixty (60) days prior written notice to Distributor by certified or registered mail. Distributor may, prior to the expiration date, terminate this Agreement for cause as set forth in Article 17 of the Standard Provisions. This Agreement shall automatically terminate upon notice to Dealer of the termination, expiration or relinquishment of Distributor's authority to act as a distributor of Subaru Products for the Area of Responsibility.

9. As indicated above, Section 17 of the Standard Provisions addresses termination under the Agreement and enumerates a non-exclusive list of events that would provide cause for termination. Specifically, Section 17.1 provides:

> Distributor shall have the right at any time to bring about termination of the Agreement for cause by delivering written notice of termination to Dealer or by sending such notice to Dealer by certified mail, other delivery service, electronic transmission, telegram, or other similar

3

> means. Any such termination notice shall take effect immediately or
> upon the expiration of any waiting period indicated below or as imposed
> by applicable law, whichever is longer. Any of the following shall be
> considered sufficient cause for termination, ...

10. Pursuant to the Agreement, Standard Provisions, and Idaho law, Subaru properly served a Notice of Intent to terminate after Subaru became aware of the Debtor's failure to comply with the Agreement and Standard Provisions.

11. In accordance with Idaho Code § 49-1614(2)(c)(1), as well as the provisions in paragraph 12 and 14 of the Agreement and Sections 6.3, 12.4, 13.1, 17.1, 17.1.2, 17.1.4 and 17.1.13 of the Standard Provisions, notice was given that the Agreement would be terminated because:

> a. Dealer failed to comply with the requirements set forth in Agreement to maintain a valid floor plan credit line to all on Debtor to order vehicles necessary to operate as a Subaru dealer;
>
> b. Dealer was insolvent;
>
> c. Dealer filed for bankruptcy.

12. Notice of the termination was given pursuant to Idaho Code § 49-1614, which provides:

> A franchisor must provide at least fifteen (15) days' notice where the termination arises from:
>
> - The dealer's insolvency, or filing of any petition by or against the dealer under any bankruptcy or receivership law;
>
> - The dealer's failure to conduct its customary sales and service operations during its customary business hours for seven consecutive business days, except for acts of God or circumstances beyond the dealer's direct control;
>
> - Conviction of the dealer, or any owner or his operator, resulting in imprisonment exceeding 30 days; or
>
> - Revocation of the dealer's license.

13. Finally, the Agreement requires performance by the Debtor and no other party is authorized under the Agreement, which is a personal service contract. Indeed, Wackerli

4

understood the Agreement is a personal service contract. Paragraph 8 of the Agreement provides:

> This is a personal service agreement. There shall be no change in the Controlling Ownership of Dealer, or transfer of any rights or obligations under this Agreement, without the prior written consent of Distributor.

## BASIS FOR RELIEF

### I. SUBARU SHOULD BE GRANTED RELIEF FROM THE AUTOMATIC STAY UNDER SECTION 362(d)(1) TO PERMIT IT TO TERMINATE THE AGREEMENT.

14. Section 362(a) of the Bankruptcy Code broadly stays acts "to obtain possession of property of the estate ... or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). However, upon the request of a party in interest, the Bankruptcy Court shall grant relief from the stay "*for cause*, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1) (emphasis added). The Bankruptcy Code does not define what constitutes "cause." Instead, courts must determine whether to grant stay relief on a case-by-case basis. See In re Wilson, 116 F.3d 87, 90 (3d Cir. 1997) ("Section 362(d)(1) does not define 'cause,' leaving courts to consider what constitutes cause based on the totality of the circumstances in each particular case."). In this case, the Debtor's pre-petition material breach of the Agreement constitutes sufficient "cause" to lift the stay to permit Subaru to exercise its contractual entitlement to terminate the Agreement.

#### A. DEBTOR'S PRE-PETITION BREACH OF THE AGREEMENT CONSTITUTES "CAUSE" UNDER 11 U.S.C. § 362(d)(1).

15. A debtor in bankruptcy is not granted greater rights and powers under a contract than it had outside of bankruptcy. See Valley Forge Plaza Assocs. V. Schwartz, 114 B.R. 60, 62 (E.D. Pa. 1990); see also Heaven Sent Ltd. v. Commercial Union Ins. Co. (In re Heaven Sent Ltd.), 37 B.R. 597 (Bankr. E.D. Pa. 1984) (citing White Motor Corp. v. Nashville White Trucks, 5 B.R. 112, 119 (Bankr. D. Mass. 1983) (the ability to terminate a contact on its own terms survives bankruptcy)). Consequently, the termination of a contract pursuant to its terms

5

generally does not violate the automatic stay. See Valley Forge, 114 B.R. at 62 (post-petition sending of a notice of termination of pre-petition agreement, pursuant to its terms, did not violate the automatic stay).

16. Here, as set forth above, the Debtor breached the Agreement pre-petition, when it failed to obtain floor plan financing for the sale of vehicles and failed to make the required payments to Subaru under the Agreement with respect to obligations incurred under the Agreement—giving rise to Subaru's corresponding right to terminate the Agreement. Furthermore, such material breach caused Subaru to affirmatively act to terminate the Agreement.

17. Subaru's right to terminate the Agreement and the Debtor's corresponding absence of a right to block Subaru's termination of the Agreement constitutes "cause" for granting Subaru relief from the automatic stay. See e.g., Sanden v. Chautauqua Capital Corp. (In re Chautauqua Capital Corp.), 135 B.R. 779, 782 (Bankr. W.D. Pa. 1992); Nashville White Trucks, 5 B.R. at 119. The filing of the Bankruptcy Case does not alter the terms of the Agreement, the Debtor's obligations incurred under the Agreement, or the parties' rights thereunder. To deny Subaru's request for relief from stay to exercise its contractual right to terminate the Agreement would improperly give the Debtor greater rights under the Agreement than existed prior to the Bankruptcy Case. Accordingly, Subaru submits that the Court should grant it stay relief for "cause" under Section 362(d)(1) and allow Subaru to terminate the Agreement.

### B. "CAUSE" TO LIFT THE STAY ALSO EXISTS UNDER SECTION 362(d)(1) BECAUSE SUBARU IS NOT ADEQUATELY PROTECTED AND THE AGREEMENT IS A PERSONAL SERVICE CONTRACT.

18. "Cause" to grant relief from stay also exits when a party with an interest in property of the estate has an interest that is not adequately protected. See 11 U.S.C. § 362(d)(1) (stating that "cause" includes a "lack of adequate protection of an interest in property").

19. In the present case, Subaru is confronted with a sizable loss under the Agreement because of the Debtor's inability to sell vehicles  The Debtor's accruing monthly payment obligation and the corresponding risk of a large unpaid administrative claim also puts Subaru at risk. The debtor has continued to use Subaru's services in the operation of the business as it did as of the Petition Date but has completely failed to comply with the most fundamental term of the Agreement—to sell vehicles. Subaru has been deprived of the benefit of its bargain in the Agreement and has been forced to become an unsecured post-petition lender with no guaranty of payment and no ability to manage its credit risk as it could have pursuant to its "sole discretion." Accordingly, Subaru submits that its lack of adequate protection constitutes "cause" to lift the stay for the purpose of permitting it to exercise its contractual entitlement to terminate the Agreement, as such right existed prior to the Petition Date.

20. Cause also exists to lift the automatic stay because, in addition to the Debtor's inability to perform under the Agreement, the Bankruptcy Code precludes the Debtor from assigning the Agreement, which is a personal service contract. See Bankruptcy Code § 365(c)(1); In re Catapult Entertainment, Inc., 165 F.3d 747 (9th Cir. 1999) (section 365(c)(1) bars assumption of the contract unless debtor can show the executory contract could be assigned to a hypothetical third party). In In re Hernandez, 287 B.R. 795 (Bankr. D. Ariz. 2002), the court granted the stay relief motion to allow termination of the executory contract and found that cause existed when the debtor could not legally assume the contract or otherwise treat it in

the plan. See also In re Pioneer Ford Sales, 729 F.2d 27, 29 (1st Cir. 1984) (automobile franchise agreement could not be assigned under Section 365(c)(1) of the Bankruptcy Code). Likewise here the Debtor has neither the legal right or ability to assume this personal services contract. Thus, the stay should be lifted for cause.

II. **ALTERNATIVELY, IF SUBARU IS NOT ALLOWED TO TERMINATE THE AGREEMENT, THE COURT SHOULD COMPEL THE DEBTOR TO IMMEDIATELY ASSUME THE AGREEMENT AND FULLY COMPLY OR REJECT THE AGREEMENT.**

21. If Subaru is not allowed to terminate the Agreement, Subaru alternatively requests that the Court compel the Debtor to immediately assume and fully comply with the Agreement or reject the Agreement.[1]

22. Under 11 U.S.C. § 365(d)(2), the Court "on the request of any party to such contract or lease, may order the trustee to determine within a specified time whether to assume or reject such contract or lease."

23. Similarly, under 11 U.S.C. § 105(d)(2), the Court is empowered to issue various kinds of orders, including an order that "sets the date by which the trustee [or debtor in possession] must assume or reject an executory contract or unexpired lease." 11 U.S.C. § 105(d)(2)(A). While the general rule affords the debtor a reasonable time by which to decide whether to assume or reject an executory contract, what constitutes a "reasonable time" is left to the Bankruptcy Court's discretion to be determined on a case-by-case basis. See Theatre Holding Corp. v. Mauro, 681 F.2d 102 (2d Cir. 1982); In re Teligent, Inc., 268 B.R. 723 (Bankr. S.D.N.Y. 2001).

24. As the Court noted in Matter of Dunes Casino Hotel:

> In determining what constitutes a reasonable time within which a debtor should assume or reject a contract, the court should consider a number of factors, including: "The nature of the interests at stake, the balance of the hurt to the litigants, the good to be achieved, the safeguards afforded those litigants, and whether the action to be taken is so in

---

[1] Subaru asserts the Debtor cannot assume the Agreement as set forth above. In the event the Court disagrees, Subaru advances this argument.

8

> derogation of Congress' scheme that the court may be said to be arbitrary."

63 B.R. 939, 949 (D.N.J. 1986) (citing In re GHR Energy Corp., 41 B.R. 668, 676 (Bankr. D. Mass. 1984), quoting In re Midtown Skating Corp., 3 B.R. 194, 198 (Bankr. S.D.N.Y. 1980).

25. In In re Grant Broadcasting of Philadelphia, Inc., 71 B.R. 891, 901 (Bkrtcy. E.D. Pa. 1987), the court applied this principle and invoked § 365(d)(2) to compel the Debtor to assume or reject a contract for the provision of television programming services within a specified time-frame. The court found that the Debtor's meager post-petition payments did not provide adequate protection of the service providers' rights. After balancing the interests of the debtors with those of the moving parties, the court ordered the debtors to assume or reject certain contracts.

26. As in Grant Broadcasting, accelerated assumption or rejection is appropriate here, where the Debtor has completely failed to act pursuant to the Agreement and is accruing a sizable monthly payment obligation to Subaru. Furthermore, the Debtor has made clear its view of the importance of the Agreement and the opportunity with Subaru, thereby effectively demonstrating a desire to assume the Agreement, even though the Debtor has no capability to perform under the Agreement.

27. For these reasons, Subaru asks this Court to compel the Debtor to immediately assume and fully comply with the Agreement or reject the Agreement.

### III. IN THE ALTERNATIVE, SUBARU REQUESTS ADEQUATE PROTECTION AND ADEQUATE ASSURANCE OF THE DEBTOR'S FUTURE PERFORMANCE UNDER THE AGREEMENT.

28. Under Sections 361 and 363(e), an entity is entitled to adequate protection as a matter of right, when that entity is stayed from enforcing its contractual entitlements or when the estate proposes to use, sell or lease property in which the entity has an interest. "Adequate protection in the context of relief from the automatic stay is clearly a flexible concept which requires a court to make decisions on a case-by-case basis after full consideration of peculiar

characteristics common to each proceeding." In re Tudor Motor Lodge Assoc., Ltd. P'ship, 102 B.R. 936, 954 (Bankr. D.N.J. 1989).

29.  In In re GHR Energy Corp., 41 B.R. 668, 677 (Bankr. Mass. 1984), the Court was unwilling to require the debtor to assume or reject on a date certain; however, the Court noted that "a fair price must be paid for the freedom to forestall the decision to assume or reject the leases." Accordingly, the court ordered to debtor to make a "reasonable payment" for the use and occupation of the interested party's leased premises within seven (7) days of the date of the court's order.

30.  Likewise in this situation, if the Court denies stay relief *and* refuses to compel the debtor to assume or reject the Agreement on a accelerated basis, until such time as the Debtor makes the assumption or rejection determination, Subaru is entitled both to adequate protection and to adequate assurance of the Debtor's future performance under the Agreement.[2] Subaru submits that such adequate protection and adequate assurance should take the form of a cash pre-payment to Subaru in an amount equal to approximately three month's charges under the Agreement together with any necessary initial "true up" payment accounting for the time period between performance and Subaru's normal invoice date. Such pre-payment should be paid by the Debtor at the beginning of each month for the product to be received by the Debtor in the upcoming month.

31.  Moreover, Subaru should be authorized to retain any current credit balance as additional adequate protection and adequate assurance of future performance. While credit balances are subject to a true-up, that reconciliation may not occur for two or three months, during which time Subaru has no way of knowing offsetting charges the Debtor may incur for which Subaru might have no other way to recover.

---

[2] For the reasons set forth above, Subaru asserts the Debtor has no ability to perform under the Agreement and therefore cannot provide adequate assurance.

32. Such prepayment and credit balance protection are especially necessary where the Debtor has the ability to expand the services consumed under the Agreement and Subaru is prohibited from exercising its rights under the Agreement, let alone exercising any discretion, in order to mitigate its credit risk. Finally, the credit risk to Subaru is especially great in this case given the lack of long-term financing currently available to the Debtor—even assuming the post-petition financing agreement is approved on a final basis by this Court—such financing expires within two months.

WHEREFORE, Subaru respectfully requests the entry of an order (i) lifting the automatic stay to permit Subaru to exercise its contractual entitlement to terminate the Agreement, (ii) in the alternative, compelling the Debtor to immediately assume or reject the Agreement, (iii) in the alternative, requiring the Debtor to provide adequate protection and adequate assurance of future performance, and (iv) granting Subaru such other and further relief as may be just and proper.

Dated: June 12, 2009

Respectfully submitted,

Daniel C. Green (ISB # 3213)
RACINE, OLSON, NYE, BUDGE
 & BAILEY, CHARTERED
P.O. Box 1391/Center Plaza
Pocatello, Idaho 83204-1391
Telephone: (208) 232-6101
Facsimile: (208) 232-6109
Email: dan@racinelaw.net

Donald A. Workman (DC Bar 443778)
BAKER & HOSTETLER LLP
1050 Connecticut Avenue, N.W.
Suite 1100
Washington, D.C. 20036
Telephone – 202-861-1602
Facsimile – 202-861-1783
Email – dworkman@bakerlaw.com

Counsel for Subaru of America, Inc.

## DECLARATION

I, Al Salazar, Assistant General Counsel of Subaru of America, Inc., hereby declare under penalty of perjury that, based on my own knowledge, information and belief, the factual allegations set forth in the foregoing Verified Motion of Subaru of America, Inc. for (i) Relief From Automatic Stay, (ii) in the Alternative, to Compel Debtor to Immediately Assume or Reject the Agreement, or (iii) in the Alternative, to Compel the Debtor to Provide Adequate Assurance of Future Performance are true.

_____
Al Salazar

## NOTICE REQUIRED BY LOCAL BANKRUPTCY RULE 4001.2

Notice is hereby given that pursuant to Local Bankruptcy Rule 4001.2, any party in interest may oppose the motion by filing and serving on the moving party a written objection thereto not later than seventeen (17) days after the date of service of this motion. The objection shall specifically identify those matters contained in the motion that are at issue and any other basis for opposition to the motion. Absent the filing of a timely response, the Court may grant the relief sought without a hearing. If an objection to this motion is filed, the objection shall be served upon the undersigned attorney for Subaru of America, Inc. ("Subaru") and upon all parties receiving service of this motion.

A party opposing this motion shall contact the court's calendar clerk to schedule a preliminary hearing. At the time of filing the objection to this motion, the objecting party shall file and serve a notice of such hearing.

Notice is hereby further given, pursuant to Local Rule 4001.2, that 11 U.S.C. § 362(e) provides as follows:

> "Thirty (30) days after a request under subsection (d) of this section [362] for relief from the stay of an act against property of the estate under subsection (a) of this section, such stay is terminated with respect to any party in interest making such request, unless the court, after notice and hearing, orders such stay continued in effect pending the conclusion of, or as a result of, a final hearing and determination under subsection (d) of this section. A hearing under this subsection may be a preliminary hearing, or may be consolidated with the final hearing under subsection (d) of this section. The court shall order such stay continued in effect pending the conclusion of the final hearing under subsection (d) of this section if there is a reasonable likelihood that the party opposing relief from such stay will prevail at the conclusion of such final hearing. If the hearing under this subsection is a preliminary hearing, then such final hearing shall be concluded not later than thirty (30) days after the conclusion of such preliminary hearing, unless the thirty (30) day period is extended with the consent of the parties in interest or for a specific time which the court finds is required by compelling circumstances."

Be further advised that Subaru shall request the Court to waive the stay provided by Bankruptcy Rule 4001(a)(3).

DATED this _12_ day of June, 2009.

/s/ Daniel C. Green
Daniel C. Green (ISB # 3213)
RACINE, OLSON, NYE, BUDGE
  & BAILEY, CHARTERED
P.O. Box 1391/Center Plaza
Pocatello, Idaho 83204-1391
Telephone: (208) 232-6101
Facsimile: (208) 232-6109
Email: dan@racinelaw.net

Donald A. Workman (DC Bar 443778)
BAKER & HOSTETLER LLP
1050 Connecticut Avenue, N.W.
Suite 1100
Washington, D.C. 20036
Telephone – 202-861-1602
Facsimile – 202-861-1783
Email – dworkman@bakerlaw.com

Counsel for Subaru of America, Inc.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 12th day of June, 2009, I served a copy of the foregoing on CM/ECF Registered Participants as reflected below:

Gregory L Crockett
gregcrockett@hopkinsroden.com
tammytheiler@hopkinsroden.com

Bradley J Dixon
bjdixon@stoel.com
boisedocket@stoel.com
sagillogly@stoel.com

David B Levant
dblevant@stoel.com
sltaylor@stoel.com
sea_docket@stoel.com

Robert J Maynes
mayneslaw@hotmail.com
robert.maynes@gmail.com

David Wayne Newman
david.w.newman@usodj.gov

Larry E Prince
lprince@hollandhart.com
chardesty@hollandhart.com
boiseintaketeam@hollandhart.com

U.S. Trustee
ustp.region18.bs.ecf@usdoj.gov


/s/ Daniel C. Green
DANIEL C. GREEN