EXHIBIT F

ROBERT J. MAYNES, ISB No. 6905
*Attorney at Law*
P. O. Box 3005
Idaho Falls, ID 83405
Telephone: (208) 552-6442
Facsimile: (208) 522-1334
Email: mayneslaw@hotmail.com

*Debtor's counsel*

UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| In Re: | Case No. 09-40202 JDP |
|---|---|
| B.A. WACKERLI CO., INC., | Chapter 11 |
| Debtor. | |

## MOTION FOR APPROVAL OF SETTLEMENT

COMES NOW the Debtor and Debtor-in-possession, B.A. Wackerli Co., Inc., by and through its attorney of record, Robert J. Maynes, Esq., and Subaru of America, Inc./Northwest Region ("SOA"), upon the grounds and for the reasons that the same is in the best interest of the expeditious administration of the bankruptcy estate and to avoid further legal costs and expenses. The nature of the controversy and proposed settlement are as follows:

<u>NATURE OF CONTROVERSY:</u>  In response to the Debtor's request for post-petition payments, SOA filed a motion requesting relief from the automatic stay "for cause" based on the Debtor's failure to maintain an adequate floor plan financing line of credit and alternatively requesting the immediate assumption or rejection of the Dealer Agreement. SOA further asserted various and sundry violations of the Dealer Agreement, including failure to maintain a sufficient number of Subaru trained


EXHIBIT 106

technicians, failure to provide an exclusive Subaru facility, failure to meet required customer loyalty standards. The Debtor objected to SOA's motion, disputing SOA's allegations and the motion was set for a final evidentiary hearing on September 16, 2009.

The Debtor has asserted in response to SOA's Stay Relief Motion, that SOA has violated the automatic stay by retaining funds[1] earned by the Debtor contrary to the terms and conditions of the Dealer Agreement and applicable law, and that Debtors breaches of the Dealer Agreement, if any, are curable under 11 U.S.C. § 365.

In preparation for the final evidentiary hearing, SOA served a Request for Production of Documents and Notice of Deposition Duces Tecum, while the Debtor's President appeared at the noticed deposition, the Debtor has objected to the document production requested. SOA has also filed a Motion to Compel demanding additional production of documents responsive to its discovery requests. The Debtor's obligation to respond to SOA's discovery request and the Motion to Compel become moot upon approval of the proposed settlement. The final evidentiary hearing has been continued via stipulation of the parties to November 4, 2009 pending the Court's determination on this Motion for approval of the proposed settlement agreement.

TERMS OF PROPOSED SETTLEMENT: The parties have agreed to settle the above summarized contested matter as follows:

    a.    The Debtor shall secure a new floor plan line of credit in an amount sufficient to meet the "Minimum Standards" set forth in the Dealer Agreement, with a

---

[1] The Debtor asserts that the amount due and owing by SOA as of August 31, 2009 is $39,128.59. The Settlement Agreement provides for payment of these funds to the Debtor as set forth in the Dealer Agreement and applicable law, specifically Idaho franchise laws (*I.C.* § 49-1601 *et seq.*), upon assumption of the Dealer Agreement.

MOTION FOR APPROVAL OF SETTLEMENT

2

motion seeking preliminary and final approval of such post-petition financing by September 30, 2009;

  b. The Debtor shall file a motion to assume the Dealer Agreement pursuant to 11 U.S.C. § 365 by September 30, 2009 and the Debtor shall demonstrate adequate assurance of future performance as follows:

    1. Debtor shall demonstrate to SOA that it has sufficient unencumbered assets to meet the applicable Planning Volume (PV) and Units in Operation (UIO) as those terms are defined in the Dealer Agreement, including, at a minimum, an exclusive Subaru financial statement;

    2. Debtor shall provide to SOA with detailed plans to provide an adequate and acceptable facility that meets SOA's Minimum Standards, and shall provide that the facility shall be upgraded to the Subaru Signature Facility Image Program Standards within twelve (12) months. Debtor shall also relocate the Audi and Volkswagen franchises within six (6) months of the Effective Date[2] of the Settlement Agreement;

    3. Debtor shall provide a performance bond or a standby letter of credit to ensure completion of the required facility upgrades satisfactory to SOA in an amount not less than $250,000.00;

    4. Debtor shall provide a personal financial statement that demonstrates that Debtor has an ability to undergo long term growth;

    5. Debtor agrees that it shall satisfy SOA's Minimum Standards with regard to technician training such that Debtor shall have, at a minimum, two (2) fully

---

[2] The Effective Date of the Settlement Agreement is the date the Order approving the Settlement Agreement is entered by this Court. *See Settlement Agreement* (Ex. A.) at Paragraph 2, subparagraph (iv).

trained Subaru technicians as required by the Dealer Agreement and such training shall be completed within eighteen (18) months of the Settlement Agreement;

   6. ALTERNATIVELY, if the Debtor elects not to comply with above sub-paragraphs (1) – (5), or fails to comply, Debtor shall provide SOA with a buy-sell agreement with a qualified dealer candidate as defined by Subaru standards and such candidate must be approved by Subaru.

   c. Upon Court approval of the motion to assume referenced above in Paragraph (b), SOA agrees to extend the Dealer Agreement for an additional eighteen (18) months on the same terms and conditions contained in the Dealer Agreement, including all of the Addenda to the Dealer Agreement, as amended by the Settlement Agreement;

   d. If the Debtor does not provide adequate assurance of future performance within thirty (30) days of the Effective Date of the Settlement Agreement, then SOA may file an affidavit detailing Debtor's non-compliance with the Settlement Agreement and SOA may submit an Order terminating the automatic stay and providing for the termination of the Dealer Agreement, with the Parties retaining al rights upon termination as set forth in the Dealer Agreement, without further notice or hearing;

   e. Upon entry of an Order providing for Debtor's assumption of the Dealer Agreement, SOA agrees to release to the Debtor any funds it is currently holding or that it obtains in the future that are payable to the Debtor;

   f. Except as otherwise set forth in the Settlement Agreement, the Parties agree to mutually release each other from all past or present claims that exist as of the date of the Settlement Agreement; and

g. Such additional provision as are set forth in the attached Settlement Agreement. A true and correct copy of the *Settlement Agreement* dated September 16, 2009 between B.A. Wackerli Co., Inc. and Subaru of America, Inc./Northwest Region is attached hereto as Exhibit "A" and incorporated herein by reference as if set forth in full. A true and correct copy of the *Dealer Agreement and Standard Provisions* is attached hereto as Exhibit "B" and incorporated herein by reference as if set forth in full.

ANALYSIS OF SETTLEMENT: The Debtor-in-possession believes that settlement of this contested matter is reasonable and meets the requirements of the test cited in *In re A & C Properties*, 784 F.2d 1377 (9th Cir. 1986) as follows:

1. Probability of Success: The probability of success is uncertain. There is little case law interpreting Idaho's franchise statutes. While other jurisdictions have had occasion to interpret similar Dealer Agreements, Idaho courts have not had a similar opportunity, either in state court or in the bankruptcy context. If the Debtor elected to proceed with the final evidentiary hearing, it is possible that the Court may determine that the alleged breaches of the Dealer Agreement were in fact "incurable" as asserted by SOA resulting in the loss of a significant asset, the Subaru franchise, to this bankruptcy estate. As such, the proposed settlement makes good business sense.

2. Difficulty encountered in collection if successful: While the Court may also ultimately find SOA in contempt for violating the automatic stay and collection should prove to be relatively straightforward, the settlement provides for payment of the sums owed by SOA to the Debtor without the necessity of additional attorney's fees and costs.

3. Complexity of the Litigation: The litigation would not be overly complex, but factual difference between witnesses' testimony and documentation, and the application of Idaho franchise statute increases the complexity of the matter. It is also unclear whether in the event relief from stay were granted if the Debtor could successfully contest termination of the Dealer Agreement under state law, making resolution of these issues time consuming and expensive.

4. The Debtor-in-possession submits that the paramount interest of the creditors is served by the settlement, as proposed. The Debtor-in-possession is retaining a valuable asset, the franchise agreement, for the benefit of this estate, further promoting ongoing business operations and the Debtor's ultimate reorganization, leading the Debtor-in-possession to the conclusion that settlement is advisable.

The Debtor-in-possession recommends approval of said proposed settlement to expedite the administration of the bankruptcy estate and to facilitate Debtor's continued operations pending confirmation of the proposed chapter 11 plan of reorganization.

DATED:    September 23, 2009

*/s/ Robert J. Maynes*
ROBERT J. MAYNES
Debtor's Counsel

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 23, 2009, I filed a copy of the attached MOTION FOR APPROVAL OF SETTLEMENT with the Court via CM/ECF and the following parties are reflected as receiving the Notice of Electronic Filing as CM/ECF Registered Participants:

**PARTIES SERVED:**

Craig W Christensen on behalf of Creditor Citizens Community Bank
cwcc@ida.net

Gregory L Crockett on behalf of Interested Party Michael Schmidt
gregcrockett@hopkinsroden.com, tammytheiler@hopkinsroden.com

Bradley J Dixon on behalf of Creditor GMAC LLC
bjdixon@stoel.com, boisedocket@stoel.com;sagillogly@stoel.com

Daniel C Green on behalf of Creditor Subaru of America, Inc.
dan@racinelaw.net, bkh@racinelaw.net;csb@racinelaw.net

R Ron Kerl on behalf of Creditor Phil & Rebecca Meador
Ron@cooper-larsen.com, jamieb@cooper-larsen.com

David B Levant on behalf of Creditor GMAC LLC
dblevant@stoel.com, sltaylor@stoel.com;sea_docket@stoel.com

David Wayne Newman on behalf of U.S. Trustee US Trustee
david.w.newman@usdoj.gov

Larry E Prince on behalf of Creditor Wells Fargo Bank, National Association
lprince@hollandhart.com, chardesty@hollandhart.com;boiseintaketeam@hollandhart.com

Janine Patrice Reynard on behalf of Creditor Zurich American Insurance Company
jreynard@hawleytroxell.com

US Trustee
ustp.region18.bs.ecf@usdoj.gov

Donald Alan Workman on behalf of Creditor Subaru of America, Inc.
dworkman@bakerlaw.com

I HEREBY CERTIFY FURTHER that on September 23, 2009, I served a copy of the attached pleading on the following parties via postage prepaid, first class, U.S. Mail:

B.A. Wackerli Co., Inc.
Steven B. Wackerli, President
P.O. Box 50857
Idaho Falls, ID 83405

September 23, 2009:

*/s/ Robert J. Maynes*
ROBERT J. MAYNES

## SETTLEMENT AGREEMENT

This Settlement Agreement (the "Settlement Agreement") is made and entered into on this 16th day of September, 2009 by and between B.A. Wackerli Co., Inc. ("Wackerli" or the "Debtor") and Subaru of America, Inc./Northwest Region, a New Jersey Corporation ("SOA" or "Subaru" and together with the Debtor, the "Parties").

WHEREAS, on February 20, 2009, the Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Code for the District of Idaho (the "Court"). The Debtor is a debtor-in-possession and is in possession of its assets and is operating its business under Sections 1107 and 1108 of the Bankruptcy Code.

WHEREAS, on or about September 5, 2008, the Debtor entered into that certain Dealer Agreement and Standard Provisions (the "Dealer Agreement") with SOA.

WHEREAS, on or about June 12, 2009, SOA filed its Verified Motion of Subaru of America, Inc. for (I) Relief From Automatic Stay, (II) in the Alternative, to Compel Debtor to Immediately Assume or Reject the Agreement, or (III) in the Alternative, to Compel the Debtor to Provide Adequate Assurance of Future Performance (Doc. No. 94)(the "Motion"). In the Motion Subaru asserts that it is entitled to relief from the automatic stay for cause on account of, *inter alia*, Debtor's prepetition breaches of the Dealer Agreement, the lack of adequate protection and the Debtor's inability to assume the Dealer Agreement. SOA also asserts that if stay relief is not granted, the Debtor should be compelled to immediately assume or reject the Dealer Agreement, or alternatively, should be required to provide SOA with adequate protection.

WHEREAS, on or about July 2, 2009, the Debtor filed its Objection to Motion of Subaru of America, Inc. for (I) Relief From Automatic Stay, (II) in the Alternative, to Compel Debtor to Immediately Assume or Reject the Agreement, or (III) in the Alternative, to Compel the Debtor to Provide Adequate Assurance of Future Performance and Notice of Preliminary Hearing (Doc. No. 114) (the "Objection"). In the Objection, the Debtor disputes that SOA is entitled to relief from the automatic stay, asserts that the Dealer Agreement is freely assignable and argues that SOA has not complied with the Idaho Code.

WHEREAS, the Motion was set for hearing on September 16, 2009 (the "Hearing").

WHEREAS, the SOA and the Debtor have agreed that it is in their mutual interests to settle the matters raised in the Motion and the Objection and to provide releases.

NOW, THEREFORE, in consideration of the premises and the mutual promises, covenants and agreements set forth in this agreement, and other good and valuable consideration, the receipt, adequacy and sufficiency of which are hereby acknowledged and do support each and every covenant herein, the Parties hereto, intending to be legally bound hereby, agree as follows:

1.  SOA and the Debtor agree that the above recitals are true and correct and are incorporated herein by reference.

2.  The Debtor agrees to accomplish all of the following according to the time periods set forth below:

**EXHIBIT "A"**

(i) The Debtor shall have secured a new floor plan line of credit in an amount sufficient to meet the Minimum Standards set forth in the Dealer Agreement. The Debtor shall provide SOA with documents evidencing the new floor plan arrangement, including, but not limited to, a copy of a commitment letter with drafting instructions, shall file an emergency motion for preliminary and final approval of post-petition financing by September 30, 2009, and shall set the motion for preliminary hearing on the earliest available date on the Court's calendar.

(ii) The Debtor shall file a motion to assume the Dealer Agreement pursuant to Section 365 of the Bankruptcy Code by September 30, 2009. In connection with the Debtor's assumption of the Dealer Agreement, the Debtor shall demonstrate adequate assurance of future performance by accomplishing the following within thirty (30) days of the Court's approval of this Settlement Agreement, and its failure to do so shall constitute a lack of adequate assurance as required by Section 365 of the Bankruptcy Code:

(a) The Debtor shall provide to SOA evidence that it has sufficient unencumbered assets as required by applicable Planning Volume (PV) and Units in Operation (UIO) based standards as set forth in the Dealer Agreement, which evidence shall include at a minimum an exclusive Subaru financial statement.

(b) The Debtor shall provide SOA with detailed plans to provide an adequate and acceptable facility that meets Subaru Minimum Standards. Such Plans shall provide that said facility shall be upgraded to the Subaru Signature Facility Image Program Standards within twelve (12) months of the Effective Date of this Settlement Agreement. In addition, the Debtor agrees to relocate the Audi and Volkswagen franchises that are currently occupying the facility within six (6) months of the Effective Date of this Settlement Agreement. If the Debtor fails to complete the upgrade within twelve months, or to relocate the other franchises within six months, it shall be deemed a material breach and the Debtor consents that said breach shall constitute good cause for termination of the Dealer Agreement, provided, however, that with respect to the relocation requirement, if the Debtor elects to relocate Subaru, and Subaru consents to the relocation proposed by the Debtor, the relocation shall occur at such time as is agreed to by the Parties.

(c) The Debtor shall provide a performance bond or a standby letter of credit to ensure completion of the facility upgrades as discussed in (b) above satisfactory to SOA in its sole discretion. The amount of the bond or standby letter of credit must be equivalent to the preliminary upgrade cost estimates, but in no event shall it be less than $250,000.

(d) The Debtor shall provide a personal financial statement that indicates, in SOA's sole discretion, that the Debtor has an ability to undergo long term growth.

(e) The Debtor agrees that it shall satisfy the Subaru Minimum Standards with regard to training such that the Debtor shall provide to Subaru sufficient proof that it will have, at a minimum, two (2) fully trained Subaru technicians as required by the Dealer Agreement, and that such training shall be completed within 18 months of this Settlement Agreement. If such training is not completed within such 18 month time period, it shall be deemed a material breach and the Debtor consents that good cause exists for the termination of the Dealer Agreement.

        (f) Alternatively, if the Debtor elects not to comply, or for any reason fails to comply with all of (a) – (e) above, the Debtor shall provide to SOA a buy-sell agreement with a qualified candidate as defined by Subaru standards and such candidate must be approved by Subaru.

        (iii) Upon Court approval of the motion to assume the Dealer Agreement (to be filed by the Debtor as set forth in subparagraph (ii) above), SOA shall agree to extend the Dealer Agreement for an additional eighteen (18) months on the same terms and conditions contained in the Dealer Agreement, including all Addenda to the Dealer Agreement, as amended by this Settlement Agreement.

        (iv) This Agreement is subject to approval by the Court and shall become effective immediately upon entry of an Order approving this Settlement Agreement (the "Effective Date"). The Debtor shall file a motion pursuant to Federal Rule of Bankruptcy Procedure 9019 seeking approval of this Settlement Agreement by September 23, 2009 and this Settlement Agreement shall become effective immediately upon entry of an Order approving it (the "Effective Date").

3. SOA agrees to continue the Hearing on the Motion until November 3, or such other date as is available on the Court's calendar, provided, however, if the Debtor fails to timely comply with its obligations hereunder, including its obligations to file the motions described above, Subaru may seek to set the Motion for hearing at the earliest available date.

4. If the Debtor does not provide adequate assurance of future performance as detailed herein within thirty (30) days of the Effective Date of this Settlement Agreement, then the Debtor agrees that upon the filing by Subaru of an affidavit setting forth the Debtor's failure to comply, the Court shall grant the Motion and shall enter an Order terminating the automatic stay and providing for the termination of the Dealer Agreement, with the Parties maintaining all rights upon termination as set forth in the Dealer Agreement, without further notice or hearing.

5. Upon entry of an Order providing for the Debtor's assumption of the Dealer Agreement, SOA agree to release to the Debtor any funds it is currently holding or that it obtains in the future that are payable to the Debtor.

6. This Agreement may not be modified, altered or amended except by agreement in writing signed by each of the parties hereto.

7. Except for the obligations created by this Agreement, the Debtor, individually and collectively and on behalf of itself and its bankruptcy estate, together with its subsidiaries, parent corporations, affiliates, stockholders, members, officers, employees, directors, attorneys, contractors, subcontractors, representatives, agents, sureties, successors or assigns (the "Debtor Releasors"), jointly or severally, do hereby forever discharge and release all past or present claims, causes of action, reckonings, notes, suits, bills, liabilities, commitments, duties, demands, or choses in action of whatever nature or kind, including, but not limited to, all rights, damages, court costs, appeal costs, attorneys' fees, litigation and/or pre-litigation expenses, punitive and/or exemplary damages, and any other kind of damages, whether sounding in contract or tort, which the Debtor Releasors now have, or may hereafter accrue or otherwise acquire, at law or equity, or otherwise, whether now known, unknown or hereinafter discovered, anticipated and unanticipated, absolute or contingent, past or present, for or on account of any and all losses, injuries, or damages, including all consequential, incidental, and derivative damages of any kind and nature, that the Debtor Releasors may have against Subaru,

including, without limitation, all claims relating to or arising out of the Dealer Agreement, together with its subsidiaries, parent corporations, affiliates, stockholders, members, officers, employees, directors, attorneys, contractors, subcontractors, representatives, agents, sureties, successors or assigns, jointly or severally (individually and collectively the "Subaru Releasees") that exist as of the date of this Settlement Agreement.

8. Except for the obligations created by this Agreement, SOA, together with its subsidiaries, parent corporations, affiliates, stockholders, members, officers, employees, directors, attorneys, contractors, subcontractors, representatives, agents, sureties, successors or assigns (the "SOA Releasors"), jointly or severally, do hereby forever discharge and release all past or present claims, causes of action, reckonings, notes, suits, bills, liabilities, commitments, duties, demands, or choses in action of whatever nature or kind, including, but not limited to, all rights, damages, court costs, appeal costs, attorneys' fees, litigation and/or pre-litigation expenses, punitive and/or exemplary damages, and any other kind of damages, whether sounding in contract or tort, which the SOA Releasors now have, or may hereafter accrue or otherwise acquire, at law or equity, or otherwise, whether now known, unknown or hereinafter discovered, anticipated and unanticipated, absolute or contingent, past or present, for or on account of any and all losses, injuries, or damages, including all consequential, incidental, and derivative damages of any kind and nature, that the SOA Releasors may have against Wackerli, including, without limitation, all claims relating to or arising out of the Dealer Agreement, together with its subsidiaries, parent corporations, affiliates, stockholders, members, officers, employees, directors, attorneys, contractors, subcontractors, representatives, agents, sureties, successors or assigns, jointly or severally (individually and collectively the "SOA Releasees") that exist as of the date of this Settlement Agreement.

9. This Agreement constitutes the entire understanding and agreement between the parties hereto and thereto with respect to the subject matter hereof and thereof and it supersedes all prior agreements, understandings and inducements, whether express or implied, oral or written. The parties hereto represent and warrant that parol evidence is not necessary to establish any terms, covenants or conditions of this Agreement.

10. Whenever possible each provision of this Agreement shall be interpreted in such a manner as to be effective and valid under applicable law, but if any provisions of this Agreement shall be prohibited by or invalid under applicable law, such provision shall be in effect but only to the extent of such prohibition or invalidity, without invalidating the remainder of such provisions or the remaining provisions of this Agreement.

11. This Agreement shall inure to the benefit of and shall be binding upon the parties hereto and their respective successors and assigns and shall also be binding upon any trustee that may be appointed in the Debtor's bankruptcy case.

12. This Agreement may be executed in two or more counterparts, each of which shall constitute an original but taken together shall constitute one agreement.

13. The parties agree that this Agreement is the result of negotiations between all of the Parties hereto and that this Agreement has been jointly drafted with the input, consent and advice of counsel for all Parties. Consequently, no presumption shall arise for, or against, any party in the interpretation of this document on the basis that such party was the draftsman of this Agreement.

14. The Parties agree that neither side is making any admissions but are compromising this matter as it is in the best interests of the Parties and that none of the arguments raised in the Motion and Objection are waived for any purpose and that all are hereby preserved for any and all purposes.

B.A. WACKERLI CO., INC.

By: _____
Steve Wackerli, President

SUBARU OF AMERICA, INC./NORTHWEST REGION

By: _____
Jim Pernas, Regional Vice President