EXHIBIT Q

BEFORE THE IDAHO TRANSPORTATION DEPARTMENT

STATE OF IDAHO

| | |
|---|---|
| IN THE MATTER OF THE PROTEST )<br>OF NOTICE OF FRANCHISE )<br>AGREEMENT TERMINATION: )<br>  )<br>B.A. WACKERLI CO., Franchisee. )<br>  )<br>  v.  )<br>  )<br>AUDI OF AMERICA, INC., )<br>Franchisor. ) | **DECISION ON PETITION FOR<br>RECONSIDERATION** |

A timely Petition for Reconsideration having been filed by the Franchisee, B.A. Wackerli in this matter requesting reconsideration of the Findings of Fact, Conclusions of Law, and Preliminary Order entered on June 8, 2012 and the hearing officer having reviewed and considered the arguments in the petition and being fully advised in the premises and the law, enters the following decision:

B.A. Wackerli Co. (Wackerli) requests that the hearing officer reconsider Conclusions of Law 17, 18, and 19 and conclude that Idaho Code §49-1613(2)(i) or (j) constitute a material provision of the dealer agreement and therefor that Audi of America, Inc's. (AoA) failure to provide a written guarantee of inventory: (1) excuses Wackerli from performance under the agreement; and (2) constitutes a lack of good faith in proceeding with the termination of the agreement. Wackerli also requests that the hearing officer reverse its conclusions and find that the Franchisor did not act in good faith in their allocation of vehicles to Wackerli for purposes of sustaining construction of the new facility.

DECISION ON PETITION FOR RECONSIDERATION -1

Conclusion of Law 17 reads:

> 17. Idaho Code §49-1613(2)(j) applies in circumstances where a manufacturer "requires" or "coerces" a dealer to construct a new facility. VWoA and AoA did not coerce or require Wackerli to commit to building a new facility. The facility commitments Wackerli made to VWoA and AoA were reached in arms-length negotiations between sophisticated business entities represented by legal counsel. VWoA and AoA provided valuable consideration, their consent to Wackerli assuming the dealer agreements in bankruptcy and to the temporary relocation of dealerships to the inferior location at 1400 North Holmes, in exchange for a facility commitment. This negotiation and the ultimate Settlement Agreement that was reached was necessitated by Wackerli's bankruptcy filing and the terms of the settlement agreement Wackerli reached with Subaru. The evidence does not support a conclusion that VWoA or AoA either required or coerced the facility commitments from Wackerli. The written guarantee provisions of Idaho Code 49-1613(2)(j) do not apply under the facts of this case. Any failure or refusal of VWoA and AoA to provide Wackerli a written guarantee of a sufficient supply of new vehicles so as to justify modification or construction in light of the market and economic conditions under the circumstances of this case does not constitute a lack of good faith. (Emphasis added.)

Wackerli argues that AoA provided no valuable consideration in the settlement agreement beyond that which they were already obligated to provide under the existing dealer agreement. Because the settlement agreement was reached, the bankruptcy court never ruled on Wackerli's motion to assume or AoA's objection, Wackerli's argument fails to recognize the legal consideration inherent in AoA's stipulation to the assumption, thus foreclosing the need for a court ruling. Wackerli's argument also fails to recognize that Wackerli was in breach of the existing dealer agreement. By putting its relationship with Subaru ahead of its relationship with AoA and agreeing to remove AoA from the existing and approved premises without the knowledge or consent of AoA Wackerli had violated material terms of the dealer agreement with AoA. AoA's agreement as part of the settlement to overlook the breach and allow Wackerli to continue as a dealer despite the violation of the material terms of the dealer agreement and to permit Wackerli to

DECISION ON PETITION FOR RECONSIDERATION -2

relocate its Audi sales and service operations to the inferior temporary location constituted additional valuable consideration for Wackerli's facility commitment.

Wackerli also argues that the facility commitment in the settlement agreement, once executed, became a "requirement" of the dealer agreement, therefore it was "required" by AoA thus triggering the application of Idaho Code §49-1613(2)(i) or (j). The hearing officer rejects this interpretation. Any obligation under an agreement once executed could be considered a "requirement" of the agreement, but the mere existence of a "requirement" in an agreement does not justify the conclusion that it was compelled or extracted from the party whose obligation it becomes. The evidence presented in this matter does not support a finding that Wackerli was compelled, required or coerced into making the facility commitment. To the contrary, the evidence establishes that Wackerli negotiated for, and agreed to, the terms of the settlement agreement. Wackerli at that point was anxious to convince AoA that it had counted the costs of the facility commitment and that the parties should enter into the settlement agreement. (Exhibit 134). Wackerli's argument is not supported by the evidence in the matter and is unpersuasive.

Conclusion of Law 18 reads:

18. The evidence does not support a finding that VWoA or AoA had an obligation to or failed to provide vehicles in the proper numbers, colors and mix of models to make construction of the new facility by Wackerli economically viable.

Wackerli argues that this finding ignores the language in the dealer agreement that obligates AoA to "endeavor to make a fair and equitable allocation and distribution of& authorized products" available to the dealer. (Exhibit 104). Wackerli reads the "endeavor to make a fair and equitable allocation and distribution" language as requiring AoA "to provide vehicles in the proper numbers, colors and mix of models to allow

DECISION ON PETITION FOR RECONSIDERATION -3

Wackerli to actually sell those vehicles in the relevant market." This reading is unsupported by the agreement or the evidence in this case. AoA's obligation under the dealer agreement to "endeavor" to provide a "fair and equitable allocation and distribution" existed in the dealer agreement before the amendments were made in the settlement agreement and remained unchanged after the amendments. There was no evidence presented that AoA did not comply with this obligation. If Wackerli expected AoA to alter its vehicle allocation commitment based upon Wackerli's facility commitment, it could and should have negotiated for the expected change as a term of the settlement agreement. No credible evidence was presented at the hearing regarding negotiations over or agreements on vehicle allocation at the time the settlement agreement was reached. Conclusion of Law 18, contrary to Wackerli's argument, does not conclude that AoA has "no obligation whatsoever to Wackerli," but that AoA did not have an obligation to provide Wackerli with "vehicles in the proper numbers, colors and mix of models to make construction of the new facility by Wackerli economically viable." Wackerli argues that Mr. Wareing's testimony with regard to an increase in vehicle allocation by Subaru after the new Subaru facility was completed was evidence of a correlation between a dealership expansion or construction of a facility and the manufacturer's commitment to allocate vehicles to support the expansion or new construction. However, no evidence was presented of a written guarantee of vehicle allocation by Subaru. Wackerli's argument is not supported by the evidence and is unpersuasive.

Conclusion of Law 19 reads:

19. The evidence does not support a finding of lack of good faith on the part of VWoA or AoA in the vehicle allocation procedures and policies they

DECISION ON PETITION FOR RECONSIDERATION -4

followed after the execution of the Settlement Agreement nor does the evidence support a finding that VWoA or AoA's vehicle allocation policies in performance of the Settlement Agreement inhibited or rendered impractical or impossible the performance of the Settlement Agreement by Wackerli.

Wackerli argues that AoA's unwillingness to provide it with the appropriate numbers, colors and mix of models of new vehicles inhibited or rendered impractical or impossible the performance of the Settlement Agreement by Wackerli and constituted a lack of good faith on the part of AoA in seeking the termination. As stated above, if the intent of the parties was that the vehicle allocation obligation in the dealer agreement was to be altered as a result of the facility commitment, provisions for such changes would have been included in the settlement agreement. No such provisions were made. After the execution of the settlement agreement the vehicle allocation obligation of AoA remained the same as it was before the settlement agreement. That obligation was to "endeavor to make a fair and equitable allocation and distribution of& authorized products" available to the dealer. To determine if a fair and equitable allocation of authorized products was made to Wackerli the hearing officer would at a minimum need evidence of production of authorized products nationwide, allocation of such products to the region, allocations of authorized products among all dealers in the region, contractual allocation commitments or guarantees to other dealers, and dealership sales, income and expense figures. No evidence was presented to establish any of the above. If Wackerli's argument were to be accepted a "fair and equitable allocation and distribution" would have to be defined as whatever number of vehicles, of whatever model, and whatever color is needed to permit Wackerli to sell enough vehicles to finance the new facility without regard to the number of vehicles produced or the fairness and equity interests of other Audi dealers. That

definition of the allocation obligation of AoA would not only be unworkable, it would be in constant flux, impossible to determine and discriminatory to other dealers. Wackerli bears the burden of proof of lack of good faith in the execution of AoA's vehicle allocation obligations and to establish that AoA's allocation policies and performance inhibited or rendered impractical or impossible the performance of the Settlement Agreement by Wackerli. That burden has not been met.

Based upon the foregoing and the hearing officer's review and consideration of each of the arguments, requests for reconsideration, and assignments of error contained in the Franchisee's Petition for Reconsideration, whether specifically discussed herein or not, the Petition for Reconsideration is DENIED.

DATED: June 25, 2012.

_____
STEPHEN A. BYWATER
Hearing Officer

# CERTIFICATE OF SERVICE BY EMAIL

I HEREBY CERTIFY that I have this 25th day of June, 2012, served a true and accurate copy of the foregoing **DECISION ON PETITION FOR RECONSIDERATION** by .pdf attachment to EMAIL addressed to the following persons:

B.A. WACKERLI CO.
C/O MICHAEL D. GAFFNEY
BEARD ST. CLAIR AND GAFFNEY
2105 CORONADO ST.
IDAHO FALLS, IDAHO 83404
Mike Gaffney <gaffney@beardstclair.com>

AUDI OF AMERICA, INC.
C/O STEPHEN R. THOMAS
MOFFAT THOMAS
P.O. BOX 829
BOISE, IDAHO 83701-0829
Steve Thomas <SRT@moffatt.com>

AUDI OF AMERICA INC.
C/O STEVEN J. YATVIN
OWEN H. SMITH
BARAK FERRAZZANO KIRSHBAUM & NAGELBERG LLP
200 WEST MADISON STREET, SUIT 3900
CHICAGO, ILLINOIS 60606
STEVE YATVIN <STEVE.YATVIN@bfkn.com>
OWEN SMITH <OWEN.SMITH@bfkn.com>

STEPHEN A. BYWATER
Bywater Law Office
P.O. Box 170399
Boise, Idaho 83717

DECISION ON PETITION FOR RECONSIDERATION -7