EXHIBIT W

ROBERT J. MAYNES, ISB No. 6905
*Attorney at Law*
P. O. Box 3005
Idaho Falls, ID 83405
Telephone: (208) 552-6442
Facsimile: (208) 522-1334
Email: mayneslaw@hotmail.com

*Debtor's counsel*

UNITED STATES BANKRUPTCY COURT

DISTRICT OF IDAHO

| | |
|---|---|
| In Re:<br><br>B.A. WACKERLI CO., INC.,<br><br>Debtor. | Case No. 09-40202 JDP<br><br>Chapter 11 |

**MOTION TO DETERMINE THAT TERMS OF THE CONFIRMED PLAN REQUIRE: (1) VOLKSWAGEN AND AUDI TO PROVIDE SUFFICIENT VEHICLES TO JUSTIFY CONSTRUCTION OF THE NEW FACILITY UNDER THE CONFIRMED PLAN, AND THAT (2) VOLKSWAGEN AND AUDI ARE IN VIOLATION OF THE TERMS OF THE CONFIRMED PLAN**

COMES NOW the Reorganized Debtor, B.A. Wackerli Co., Inc., by and through its attorney of record, Robert J. Maynes, Esq., and pursuant to 11 U.S.C. § 1141 and Federal Rule of Bankruptcy Procedure 3020(d) and hereby moves for a determination that Volkswagen of America, Inc., with regards to both the Volkswagen and Audi franchises, has an affirmative obligation under the terms of the Confirmed Plan to provide sufficient new vehicles to justify construction of the new facility and that Volkswagen and Audi are in violation of the terms of the Confirmed Plan due to its failure to do so.

## BACKGROUND

1. An emergency petition under chapter 11 of title 11 of the United States Code was filed on February 20, 2009;

2. On or about January 15, 2010, the Debtor filed its Motion to Assume the Volkswagen and Audi Franchise Agreements (Docket No. 239);

3. On or about February 5, 2010, Volkswagen and Audi filed their objections to the Debtor's Assumption Motion—primarily objecting to the Debtor's proposed relocation of the Volkswagen and Audi dealership operations (Docket No. 249);

4. On or about April 28, 2010, the parties resolved their respective differenced with a Stipulated Order that provide that a subsequent Settlement Agreement would be incorporated into the Debtor's Plan (Docket No. 283);

5. The Parties' Settlement Agreement provided in relevant part that within the earlier of 18 months from confirmation or March 31, 2012 that the "Debtor shall complete construction of a new VW/Audi dual brand-dedicated sales and service facility on the property located at 1400 N. Holmes Ave." pursuant to the construction agreements incorporated into the Settlement Agreement as Exhibit E and Exhibit F for Volkswagen and Audi, respectively. *See Settlement Agreement*, Paragraph 5, attached as Exhibit A to the Confirmed Plan (Docket No. 303.1 at p. 33 of 52).

6. On June 29, 2010, The Debtor's First Amended Chapter 11 Plan of Reorganization was confirmed and the Confirmation Order entered (Docket 303).

7.    On or about November 5, 2010, Debtor's counsel sent an email to counsel for Volkswagen and Audi indicating that there was a problem with the 2011 allocation.[1] A true and correct copy of this email is attached hereto as Exhibit "A".

8.    On or about December 2, 2010, Debtor's counsel emailed the letter attached hereto as Exhibit "B" to counsel for Volkswagen and Audi indicating the Debtor's concern regarding the proposed allocation for 2011. For example, the Audi allocation for 2011 consisted of 30 new vehicles with no new allocation until after February 2011 and the VW allocation was less than the 2010 allocation. It further noted that the Debtor considered the "deficient allocation to be an anticipatory repudiation" but suggested a waiver of construction deadlines until a sufficient new vehicle supply could be provided.

9.    On January 4, 2011, in response to an inquiry from the Court, the Debtor filed its *Statement Regarding Case Status* (Docket 330) indicating that the Reorganized Debtor "has encountered difficulties with its new vehicle suppliers, VW and Audi. Specifically, the allocation of new vehicles provided has been significantly less than what the Reorganized Debtor would require to comply with its obligations under the Settlement Agreement with these parties. There have been discussions between counsel in December 2010 and the parties are attempting to resolve this matter amicably without the necessity of Court involvement." *Statement* at 2-3 (Docket 330).

10.   On February 18, 2011, Debtor's counsel sent the email attached hereto as Exhibit "C" to counsel for Volkswagen and Audi indicating that supply continued to be a problem.

---

[1] The Debtor maintains that the "allocation" process does not satisfy the "written guarantee" requirement of I.C. § 49-1613, due to the fact that the allocated amount is not guaranteed, but is treated as a planning target.

MOTION TO DETERMINE
3

11. On March 7, 2011, Volkswagen and Audi filed its *Joint Response to the Debtor's Statement* (Docket 346) asserting that "allocation to the Reorganized Debtor has been fair and equitable, consistent with the requirements of the Dealer Agreements, Volkswagen and Audi allocation policies and procedure, and all applicable state legal requirements, and that the Reorganized Debtor has defaulted on its facility obligations under the Dealer Agreements, which constitutes grounds for termination of the Dealer Agreements under the terms of those Agreements and consistent with Idaho state law." Volkswagen and Audi further asserted that this Court was not the proper forum to address this dispute. *Joint Statement* at 2-3 (Docket 346).

12. Notwithstanding the parties' efforts, this matter currently remains unresolved and Court interpretation of the terms of the Confirmed Plan is required to resolve this matter.

13. As a direct and proximate result of Volkswagen and Audi's failure to comply with the terms of the Confirmed Plan, the plan payment to the Unsecured Class, which is calculated as 25% of the Debtor's Net Profit (as that term is defined in the Confirmed Plan), annually, has been negatively impacted. *See Confirmed Plan* at 15 of 52 (Docket 303.1).

## POINTS AND AUTHORITIES

### I.
### THIS COURT RETAINED JURISDICTION OVER ITS CONFIRMATION ORDER AND TO INTERPRET AND ENFORCE THE TERMS OF THE CONFIRMED PLAN

This Court is the only appropriate forum to interpret its own orders and to enforce the terms of the Confirmed Plan. Pursuant to Article 8, Paragraph 10 of the Confirmed Plan (Docket No. 303.1 at p. 27 of 52) this Court has retained jurisdiction to "Hear and

determine any dispute relating to the terms or implementation of the Plan or Order of Confirmation, or to the rights or obligations of any party in interest with respect thereto Pursuant to Paragraph 13 this Court also retained jurisdiction to "Hear and determine any matter related to the assumption, assignment, or rejection of an executory contract or unexpired lease of the Debtor." *See Confirmed Plan*, Article 8, Paragraphs 5, 9, 11 and 12 (Docket 303.1); *see also* 11 U.S.C. § 1141(a) and (d).

Further, where the conduct constitutes a violation of the Confirmed Plan and negatively impacts the distribution to the class of unsecured creditors, this Court is the only appropriate forum from which a remedy is available.

As such, this contested matter is appropriate before this Court.

## II
## *IDAHO CODE* § 49-1613 IS AN INTEGRAL PART OF THE CONFIRMED PLAN PURSUANT TO THE CONFIRMED PLAN'S CHOICE OF LAW PROVISIONS

*Idaho Code* § 49-1613(2) provides in relevant part that:

It shall be unlawful for any manufacturer licensed under this chapter to require, attempt to require, coerce, or attempt to coerce, any new vehicle dealer in this state to:
. . .
(i) Expand facilities without a written guarantee of a sufficient supply of new vehicles so as to justify an expansion, in light of the market and economic conditions.
(j) Make significant modifications to an existing dealership or to construct a new vehicle dealership facility without providing a written guarantee of a sufficient supply of new vehicles so as to justify modifications or construction, in light of the market and economic conditions.

*Idaho Code* § 49-1613 further provides that "(7) The provisions of this chapter shall apply to **all** written franchise agreements between a manufacturer and a dealer . . . ." and "(5) It is unlawful for any manufacturer or agent or employee of a manufacturer to use a written instrument, agreement, or waiver to attempt to nullify any of the provisions of this

section, **and such agreement, written instrument or waiver shall be null and void.**" (emphasis added).

The requirement to provide a written guaranty to provide a sufficient supply of new vehicles of an appropriate inventory mix (i.e. in light of the market and economic conditions) cannot be waived—nor does the Confirmed Plan purport to waive these statutory protections. In fact, the Confirmed Plan acknowledges that Idaho law controls both the Plan and the Settlement.

Pursuant to *Article Twelve, Paragraph 3* of the Confirmed Plan, "Except to the extent that the Code or other federal law is applicable, the rights, duties and obligations arising under this Plan shall be governed and construed and enforced in accordance with the laws of the State of Idaho." (Docket 303.1 at 29 of 52) There is a second Choice of Law provision in the Settlement Agreement that requires application of Idaho law with respect to the agreement. *See Settlement Agreement* attached as Exhibit A to the Confirmed Plan, Paragraph 9 (Docket 303.1 at p.34 of 52).[2]

In short, Idaho Code § 49-1613 constitutes an integral part of the Confirmed Plan and failure to comply equates to a violation of the terms and conditions of the Confirmed Plan.

### III
### *IDAHO CODE* § 49-1613(2) (i) & (j) REQUIRES AUDI AND VOLKSWAGEN TO PROVIDE A SUFFICIENT SUPPLY OF NEW VEHICLES, IN LIGHT OF THE MARKET AND ECONOMIC CONDITIONS

The Settlement Agreement is premised on application of *Idaho Code* § 49-1613, which requires Volkswagen and Audi to provide written guarantees of a sufficient supply

---

[2] The Settlement Agreement states, "This Agreement shall be deemed to have been executed and delivered in the State of Idaho and the terms and provisions of this Agreement shall be construed according to the laws of the State of Idaho, without regards to its choice of law principles."

of new vehicles, in light of the market and economic conditions, to justify the construction of the new facility. *Idaho Code* § 49-1613(2) provides in relevant part that:

It shall be unlawful for any manufacturer licensed under this chapter to require, attempt to require, coerce, or attempt to coerce, any new vehicle dealer in this state to:
. . .
(i) Expand facilities without a written guarantee of a sufficient supply of new vehicles so as to justify an expansion, in light of the market and economic conditions.
(j) Make significant modifications to an existing dealership or to construct a new vehicle dealership facility without providing a written guarantee of a sufficient supply of new vehicles so as to justify modifications or construction, in light of the market and economic conditions.

As noted in the concurrently filed Affidavit of Steven B.Wackerli, Volkswagen and Audi combined have provided not more than 43 new vehicles between them since June 2010, representing a gross profit of significantly less than $100,000.00.

Mr. Wackerli further notes that the new facility has an anticipated cost of between 1.5 and 2 million dollars. In short, the vehicles provided to date do not justify the proposed construction. *Wackerli Affidavit* ¶ 6.

The Debtor needs approximately 240-300 new vehicles annually (between the 2 manufacturers) to support the cost of a new facility, with such inventory being phased in over 12 months. *Wackerli Affidavit* ¶ 13.

Mr. Wackerli further notes that nearly $1,000,000.00 in added costs--$965,668.80 have been incurred to relocate Volkswagen and Audi and in anticipation of the new facility, plus attorney's fees and costs. *Wackerli Affidavit* ¶ 8. Where the Confirmed Plan calculates the annual payment to unsecured creditors based on a percentage of net profit (as that term is defined in the Confirmed Plan), the unsecured creditors, in addition to the Reorganized Debtor, have been negatively impacted by Volkswagen and Audi's refusal to comply with the *Idaho Code*, as incorporated into the Confirmed Plan.

Therefore, Debtor asserts that as a direct and proximate result of Volkswagen and Audi's failure to comply with the terms of the Confirmed Plan, the plan payment to the Unsecured Class, which is calculated as 25% of the Debtor's Net Profit (as that term is defined in the Confirmed Plan), has been significantly reduced, and Volkswagen and Audi's conduct should be treated as an anticipatory repudiation such that the Debtor's performance under the Settlement Agreement is excused and a contempt of Court for failure to comply with the terms of the Confirmed Plan.

In short, the Debtor's performance under the Settlement Agreement should be excused until such time as Volkswagen and Audi comply with the terms of the Confirmed Plan and the *Idaho Code*, i.e. provide a written guaranty of a sufficient supply of new vehicles, of an appropriate make, model, color, etc. in light of market and economic conditioning, to justify construction and deliver as guaranteed.

Further, Volkswagen and Audi should be found in contempt of Court and sanctioned in an amount sufficient to make the unsecured class and Reorganized Debtor whole.

NOTICE OF INTENT TO OFFER EVIDENCE AND TESTIMONY

Pursuant to Rule 9014.1 of the Local Bankruptcy Rules gives notice that Debtor's counsel intends to present evidence and testimony through witnesses and to cross-examine witnesses as such other parties may be allowed to call, at the hearing currently scheduled for June 22, 2011 at 1:30 p.m. on the foregoing Motion and any Objection thereto.

DATED:    May 27, 2011

/s/ Robert J. Maynes
ROBERT J. MAYNES
Debtor's Counsel

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 27, 2011, I filed a copy of the above referenced MOTION TO DETERMINE THAT TERMS OF THE CONFIRMED PLAN REQUIRE: (1) VOLKSWAGEN AND AUDI TO PROVIDE SUFFICIENT VEHICLES TO JUSTIFY CONSTRUCTION OF THE NEW FACILITY UNDER THE CONFIRMED PLAN, AND THAT (2) VOLKSWAGEN AND AUDI ARE IN VIOLATION OF THE TERMS OF THE CONFIRMED PLAN with the Court via CM/ECF and the following parties are reflected as receiving the Notice of Electronic Filing as CM/ECF Registered Participants:

PARTIES SERVED:

Mary P Kimmel on behalf of U.S. Trustee US Trustee
ustp.region18.bs.ecf@usdoj.gov

David Wayne Newman on behalf of U.S. Trustee US Trustee
ustp.region18.bs.ecf@usdoj.gov

James A Spinner on behalf of Creditor Audi of America, Inc., a division of Volkswagen Group of America, Inc.
spinjim@cableone.net

US Trustee
ustp.region18.bs.ecf@usdoj.gov

And as otherwise noted in the Court's Notice of Electronic Filing.

I HEREBY CERTIFY FURTHER that on May 27, 2011, I served a copy of the above referenced pleading on the following parties via postage prepaid, first class, U.S. Mail and via Email Transmission:

Kimberly J. Robinson, Esq.,
James R. Vogler, Esq.
Barack Ferrazzano, Kirschbaum, & Nagelberg, LLP
200 West Madison St.
Suite 3900
Chicago, IL 60606-3465
kim.robinson@bfkn.com
jim.vogler@bfkn.com

DATED: May 27, 2011

*/s/ Rosalie Bowman*
Rosalie Bowman
Legal Assistant