EXHIBIT X

UNITED STATES BANKRUPTCY COURT
DISTRICT OF IDAHO
BOISE, IDAHO

In re:                        )
                              )
B.A. WACKERLI CO., INC.,      )    Case No. BK-09-40202-JDP
                              )
        Debtors.             )
                              )    Pocatello, Idaho
                              )    August 9, 2011
                              )    10:55:58 a.m.
_____)

**TELEPHONIC HEARING ON MOTIONS**

**CHAPTER 11**

HELD BEFORE THE HONORABLE JIM D. PAPPAS,
PRESIDING JUDGE OF THE U.S. BANKRUPTCY COURT

COURT RECORDER:

PAM FULWYLER
U.S. Bankruptcy Court

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

APPEARANCES:


FOR THE DEBTORS:          ROBERT J. MAYNES, Esq.
                          P.O. Box 3005
                          Idaho Falls, Idaho  83403
                          mayneslaw@hotmail.com



FOR THE CREDITORS:        For Volkswagen/Audi:
                          JAMES A. SPINNER, Esq.
                          Service & Spinner
                          P.O. Box 6009
                          Pocatello, Idaho  83205
                          spinjim@cableone.net

                          KIMBERLY J. ROBINSON, Esq.
                          Barack Ferrazzano, et al.
                          200 West Madison St., Suite 3900
                          Chicago, Illinois 60606
                          kim.robinson@bfkn.com

```
1   POCATELLO, IDAHO                    TUESDAY, AUGUST 9, 2011
2              PROCEEDINGS BEGAN AT 10:55:58 A.M.
3              (Telephonic Roll Call Taken by the Clerk)
4              THE CLERK:  Judge Pappas is on the bench.
5              THE COURT:  Good morning everyone.  This is in the
6   matter of B.A. Wackerli Company, Inc., Chapter 11 case number
7   09-40202.
8              It's the date and time I've set to allow counsel to
9   make oral argument concerning the current motion involving
10  the debtor and Volkswagen and Audi.  The Clerk will note the
11  appearances for the our record.
12             I want to begin by thanking you for accommodating
13  my schedule.  You're all bankruptcy lawyers and you know what
14  a day in the life of the bankruptcy court is like, and today
15  we have a monster Chapter 13 calendar this afternoon and I
16  did have a little time free up this morning.  I'm pleased
17  that you were willing to let us sneak this in.
18             I'm also -- you know, I want to compliment your
19  good judgment because we might have been going late tonight
20  and so I didn't want you sitting around by the phone waiting
21  for the judge to call, so anyway, my thanks.
22             I have carefully reviewed everything that has been
23  filed with the Court, and in particular want to commend the
24  excellent briefing that's been done here.  But I'm not so old
25  as to not remember what being a lawyer was all about, I
```

1 think, and therefore I'm always sensitive to allowing
2 counsel to advocate and do as much as they can for their
3 clients. And so I was concerned with giving you a chance to
4 make oral arguments and comments, maybe a chance for me to
5 ask a few questions.

6 And so what I'm going to do is I'm going to start
7 with Mr. Maynes and invite you to make whatever additional
8 argument and comments that you'd like to concerning the issue
9 -- the issues before the Court on the so-called motion to
10 dismiss this matter. And we'll give everyone a chance to
11 also respond.

12 Mr. Maynes, would you like to lead off? Well, I
13 guess -- technically I guess we ought to go to counsel for
14 Volkswagen/Audi because they're the moving party here, so
15 we'll ask -- it's Ms. Robinson. Right?

16 MS. ROBINSON: That's correct, Your Honor.

17 THE COURT: Go right ahead, counsel.

18 MS. ROBINSON: Okay.

19 Well, Your Honor, I won't reiterate everything
20 that's in the pleadings, and I welcome any questions that
21 you do have. But, just briefly, Your Honor, as we've noted
22 in the papers, what this -- what this kind of boils down to
23 is back at the beginning of the case the debtor ended up
24 making a deal with Subaru that basically required them to get
25 Volkswagen and Audi out of the location that Volkswagen and

```
 1   Audi were willing to stay in.  That's what happened early on
 2   in the case.  The debtor then wanted to assume the agreements
 3   with Volkswagen and Audi throughout the case, and again, I
 4   won't belabor all of the details, but all along my clients
 5   were concerned about the debtor's ability to move them and
 6   move them into a facility that -- that they would be able to
 7   justify economically.
 8            We didn't know that that could happen.  We would
 9   have been happy to stay where we were.  Their agreement with
10   Subaru didn't allow that.  And so at the end of the day we
11   agreed, after a lot of discussions, to -- we agreed to a
12   renovation and a relocation that was the debtor's idea,
13   certainly not ours.  That agreement was incorporated into a
14   settlement agreement.  That settlement agreement was
15   incorporated into a plan.  The plan was confirmed and down
16   the road later on the debtor decided -- or determined that --
17   apparently determined that the number of cars that it was
18   getting was not going to be enough.  And, in essence, based
19   on their motion, they were going to need, I don't know, six,
20   ten times as many cars as they'd ever gotten in the past in
21   order to facilitate -- or to justify the construction.
22            Again, Your Honor, no facts.  The debtor then
23   couches its motion as a motion for the Court to interpret
24   the terms of the plan that frankly these terms were never
25   part of the plan, Your Honor.  You were at all the hearings,
```

1  we were at all the hearings, we have the papers. There was
2  never any discussion about a drastic change in the debtor --
3  or in the distributor's allocation procedures that would be
4  required as what -- what the debtor is now saying in order to
5  justify the new facility.
6      Again, we always questioned their ability to do
7  this. They wanted to do it, despite our reservations. They
8  are now trying to claim that this is some component and some
9  part of the plan, which frankly it isn't. And, you know,
10 they cited Idaho statute.
11     We don't dispute that all relevant Idaho statutes
12 are part of the plan, part of the settlement agreement, but
13 the fact that statutes are applicable, they're only
14 applicable if their terms actually apply. So this statute
15 that the debtor basically is couching and is relying on for
16 all of its relief simply doesn't apply in this case. It --
17 the statute provides that if the distributor requires or
18 coerces the debtor to move its affiliates then they have to
19 provide a written guarantee. Well, that makes sense. If my
20 client says you have to move then, you know, the statute
21 makes sense. That's not what happened, Your Honor. And it's
22 I think pretty clear to everybody that that's not what
23 happened.
24     So again, I don't want to belabor everything that's
25 in the arguments, but basically this boils down to a deal

1  that the debtor made that frankly probably wasn't a very good

2  deal for the debtor and now they want out of it.  And they

3  want out of it by trying to argue that they now need --

4  frankly they say they need 240 to 300 cars.  They've never

5  sold more than, in the last four or five years 100 cars, so

6  they wouldn't -- even if -- even if the allocation procedures

7  would allow them to get that, they couldn't sell that, Your

8  Honor.  The market wouldn't -- wouldn't even bear it.  So

9  the motion makes clear that what the debtor is asking for

10 doesn't make sense.

11        So, you know, I'm happy to discuss _Pegasus_ and _Ray_

12 and all the cases, but I don't know that that's necessary.

13 I'm happy to, you know, answer any other questions that you

14 have, or maybe after, you know, after Mr. Maynes goes.  But

15 again, I think we've pretty much laid out our position in

16 our papers, Your Honor.  And this is a matter that frankly

17 should be before the state court.  You know, the plan was

18 confirmed a year ago.  This is a matter of, you know, if --

19 I don't -- there's no question of bankruptcy expertise,

20 there's no question of, you know, specific code provisions.

21 Mr. Maynes' citation of, you know, the statutory provision

22 that says, you know, a plan must provide adequate means for

23 its implementation, well, of course it does.  But that's the

24 mean that -- a term that was never discussed, never

25 negotiated, never part of the plan somehow magically becomes

1 part of it just because it would be better for the debtor at
2 that point.

3      So I think, you know, at this point that's
4 sufficient as long as I can reserve some time to respond to
5 whatever -- whatever Mr. Maynes is going to say.

6      And by -- you know, I'm happy to answer any
7 questions that you have also, Your Honor.

8      THE COURT:  Thank you, Ms. Robinson.

9      Now we're going to move to Mr. Maynes.

10      MR. MAYNES:  Your Honor, are there any specific
11 questions that you'd like me to address as I proceed through
12 my presentation?

13      THE COURT:  From the inception I've been concerned
14 about both subject matter jurisdiction and procedural issues,
15 Mr. Maynes, so that's what I'm looking at.

16      MR. MAYNES:  All right.  Thank you, Your Honor.

17      Just as a preliminary item, Your Honor, I'd note
18 that this is essentially structured as a motion to dismiss
19 by Volkswagen and Audi, and as such I'm operating under the
20 premise that the affidavits of Mr. Guido [phonetic] and Mr.
21 Lazara [phonetic] will not be considered and this will not
22 be treated as a summary judgment motion.  If that's not the
23 case we would request that we have an opportunity to respond
24 to those affidavits.

25      I'd also note for the benefit of the record that

1 Volkswagen and Audi tends to recite arguments as facts,

2 specifically with regards to the genesis of the agreement.

3 We're not here to consider those facts but rather to address

4 the issues raised in the motion. Those alleged facts are

5 not in the record and really shouldn't be considered unless

6 we're going to deem this a summary judgment motion.

7        As noted in the motion and the opposition brief,

8 there really are three -- three items under consideration.

9 The first issue is an issue of subject matter jurisdiction.

10 The second is the procedural approach to this. And then

11 third is the assertion that the motion fails to state a

12 claim.

13        I don't think there's any dispute as to the

14 applicable law. The Court pointed us to *Ray* and *Pegasus*

15 *Gold*, and really we're dealing with an issue of whether this

16 is arising in or arising under jurisdiction or related to

17 jurisdiction.

18        As noted in the opposition brief, Your Honor,

19 1142(b) allows the Court to direct compliance with a confirmed

20 plan and Rule 3020(b) provides the power for the Court to do

21 so.

22        I appreciate the fact that Volkswagen and Audi want

23 to characterize the debtor's contempt motion as dealing

24 strictly with post-confirmation state law matters. However,

25 you have to look at the confirmed plan and the disclosure

1 statement to see the direct impact that this dispute has.

2      The plan in the related settlement agreement

3 required the debtor to build a brand [unintelligible]

4 facility for Volkswagen and Audi to separate it out from

5 Subaru. The estimated cost on that is a million-five to 2

6 million dollars, as set forth in the affidavit of Steve

7 Wackerli. And to date, the debtor has expended significant

8 sums but ceased moving forward with the construction and the

9 plans when it became apparent that there was not a sufficient

10 supply of inventory being provided.

11      I realize that Volkswagen and Audi have relied on

12 their complicated allocation procedure, but to the extent

13 that their procedure is based on a turn to earn or sell a car

14 to get a car, it fails to account for the changes set forth

15 in the plan and the requirement for a new facility. Where a

16 facility was combined with other franchises initially,

17 there's clearly additional overhead costs that have to be

18 incurred and the inventory would have to be increased to

19 accommodate that.

20      I would further note that the plan requires -- or

21 provides that the unsecured creditors would receive -- excuse

22 me -- 25 percent of the debtor's net profit over the term of

23 the plan, and that the projections in the disclosure

24 statements were premised on having not only the Volkswagen

25 Audi facility but as together with the Subaru and GM

1  facilities. Excuse me.

2      Basically what it boils down to in the debtor's

3  mind is that Volkswagen Audi would have the Court interpret

4  the plan in such a way that the debtor's obligation to build

5  the new facility is absolute and completely unrelated to any

6  supply of the necessary inventory. I just think that's --

7  that's illogical, Your Honor, and it's not supported by the

8  law.

9      Given the direct implications between this dispute

10  and the provisions of the plan. Under 1142 I think there is a

11  rising in or rising under jurisdiction.

12      THE COURT: Mr. Maynes, I need to ask you a

13  question about that. What is the legal basis for your

14  suggestion that Volkswagen and Audi have an affirmative duty

15  to supply a sufficient number of vehicles inventory to your

16  client to support the facility to be constructed here? What

17  is -- what is the legal grounds for your argument there?

18      MR. MAYNES: It's both 1125, Your Honor, and Idaho

19  Code 49-1613.

20      THE COURT: Okay. Now what -- when you say 1125,

21  you're going to need to explain that to me.

22      MR. MAYNES: Well, I think that the plan requires

23  the debtor to have sufficient means to implement the plan,

24  and then by incorporating relevant state statutes into the

25  plan, the premise is that if the debtor wasn't able to build

1 the facility and an inventory obligation was not imposed on
2 the manufacturers, then there wouldn't have been sufficient
3 means to be able to implement that plan provision.

4     THE COURT: Well, but the only way you get to that
5 is by your suggestion, and you ran over it quite quickly in
6 your comment there, is that effectively you're arguing 1125
7 incorporates the Idaho state statutory scheme.

8     MR. MAYNES: Your Honor, I'm not arguing that it
9 incorporates it. What I'm arguing is that it doesn't preempt
10 it.

11     THE COURT: Okay.

12     MR. MAYNES: And that because --

13     THE COURT: But it --

14     MR. MAYNES: Excuse me. Go ahead.

15     THE COURT: I'm just wondering if you can point me
16 to some bankruptcy law provision, either in the code or some
17 provision in the parties' stipulations or their conduct
18 during the Chapter 11 case that would give rise to a legal
19 claim for violation of this duty, other than by reference to
20 either state contract law or the Idaho Code provisions
21 dealing with, you know, automobile distributors and dealers.

22     MR. MAYNES: Your Honor, the only way that we get
23 there is by reference to state law.

24     THE COURT: Well, you know, state law is
25 incorporated effectively any time a Chapter 11 plan

1 | restructures the obligations of a debtor and a creditor.
2 | Wouldn't you agree?
3 |     MR. MAYNES: Yes, Your Honor.
4 |     THE COURT: In this case I guess technically we've
5 | got the debtor and another party vis a vis what was an
6 | executory contract that was assumed. But my concern with
7 | your argument is that if you are correct then anytime post-
8 | confirmation in a Chapter 11 case where the debtor claims
9 | the creditor or the third party, the other party to the
10 | contract is not performing as agreed, as provided in the
11 | plan, then you come back to Bankruptcy Court under 1125 as
12 | your remedy?
13 |     MR. MAYNES: Your Honor, the difference that I see
14 | is that this has such a material impact on the performance of
15 | the plan and the direct impact it has on the debtor's net
16 | income.
17 |     THE COURT: Okay. So it's a combination of the
18 | breach of the parties' agreement, whether that's express or
19 | implied, breach of the state statutes and the significance of
20 | the financial impact that has on the debtor's ability to
21 | perform the terms of the plan?
22 |     MR. MAYNES: Well, I think additionally the fact
23 | that the state franchise laws are incorporated into the
24 | settlement agreement. I think it would be disingenuous on
25 | my part to say that somehow -- or it would be illogical to

1 require the debtor, in a settlement agreement, to set forth
2 the applicable state statutes unless they're being preempted.
3 And so if those state statutes are incorporated and we're
4 not changing those state statutes by incorporating them into
5 the plan then I think that -- that is the basis for asserting
6 liability in this instance.
7     THE COURT: Well, I understand that. But let's
8 hypothetically take a Chapter 11 plan that restructures a
9 deed of trust on a piece of commercial property. All right?
10    MR. MAYNES: Okay.
11    THE COURT: And the debtor is performing in the
12 debtor's view, according to the terms of the plan. In other
13 words, trying to make the payments that are set forth in the
14 Chapter 11 plan. And out of the blue the bank, the creditor
15 says you're in default and we're going to foreclose. And you
16 know, we're a year post-confirmation in that context. And
17 what I'm asking you, Mr. Maynes, is assuming there's --
18 there's a legal basis under state law to argue that the
19 creditor is engaging in a wrongful foreclosure, is that an
20 action that you contend under 1125 would also come back to
21 the bankruptcy court?
22    MR. MAYNES: Your Honor, I think that just brings
23 us straight into _Pegasus_ and the close nexus test.
24    THE COURT: Okay. Go right ahead, sir.
25    MR. MAYNES: Yeah. And I think it really is going

1  to turn on the facts of each instance.  And in *Pegasus Gold*
2  the facts are, essentially they had a pre-confirmation
3  settlement agreement that was then incorporated into the
4  plan.  They then had problems that -- with performance under
5  the settlement agreement and then didn't have a -- a state
6  law complaint asserting a myriad of state law causes of
7  action, you know, along the lines of unjust enrichment,
8  tortuous interference and conversion.  And the court in that
9  instance looked at it and said well, under the close nexus
10 matters affecting interpretation, implementation,
11 consummation, execution or administration will have the
12 requisite close nexus.  I think the facts of this case mirror
13 those facts to a certain degree.  I admit that it's not on
14 all fours but it does provide that here we have a settlement
15 agreement of a pre-confirmation dispute.  Settlement
16 agreement is incorporated into the confirmed plan, and then
17 shortly after confirmation a few months later we have
18 problems with the supply of inventory.
19       I think similarly the contempt motion in this
20 instance requires the Court to interpret the plan as it was
21 in *Pegasus* and the resolution of this matter directly impacts
22 implementation and execution.
23       And again, that just brings me back to the
24 assertion, Your Honor, that the supply of inventory is
25 condition precedent to construction of the new facility under

1 the state statute.  And then that would be the basis for

2 related to jurisdiction.

3 　　　　As noted in the opposition brief, I do cite to a

4 Sixth Circuit BAP decision, which I think has a helpful

5 interpretation and says that it's difficult to imagine a

6 closer nexus to the debtor's case and confirmed plan in its

7 direct request for interpretation and clarification of the

8 plan.

9 　　　　With that, Your Honor, I'm ready to move on to the

10 next issue of --

11 　　　　THE COURT:  Yeah.

12 　　　　MR. MAYNES:  -- procedure, unless the Court has

13 questions regarding jurisdiction.

14 　　　　THE COURT:  Go right ahead, Mr. Maynes.

15 　　　　MR. MAYNES:  Thank you, Your Honor.

16 　　　　Candidly with regards to the case cited in the

17 opposition brief, I acknowledge that _Barrientos_ is factually

18 distinguishable.  However, I think where it is a Ninth

19 Circuit decision it does impose an obligation for the debtor

20 to seek relief for contempt under a motion procedure instead

21 of an adversary proceeding.  To the extent that the Court

22 disagrees, the debtor would request leave to file an

23 adversary complaint.

24 　　　　THE COURT:  My concern with that is, Mr. Maynes, so

25 maybe you can help me on that, you know, as a trial judge I

1 think I should only find someone in contempt of the Court's
2 order if I can find that it's a clear and definite and
3 distinct and understandable order and there's basically a
4 willful failure to obey it.  My concern with calling this an
5 appropriate case for contempt is the fact that we have to --
6 we have to search the plan pretty hard and we have to
7 basically go not only to the settlement agreement but maybe
8 to state statute before we come up with any legal basis for
9 saying there's inappropriate conduct.

10          I mean I guess what I'm saying is even if you state
11 a claim for compensatory relief here is this -- is this
12 really contempt in the sense of violating a court order, or
13 is this more in the class of breach of the plan provisions
14 or a breach of the parties' settlement agreement or breach of
15 the statute again?  I -- we're usually pretty conservative
16 before we hold someone in contempt.

17          MR. MAYNES:  Your Honor, I would acknowledge that
18 this is really in the nature of breach of the terms of the
19 confirmed plan, and the argument there is a settlement
20 agreement and the state statute is incorporated into the
21 plan.  And so to the extent that the Court thinks that a
22 different procedure should have been followed, we'd request
23 leave to file the adversary complaint.

24          THE COURT:  Okay.  Thanks, Mr. Maynes.
25          MR. MAYNES:  Thank you, Your Honor.

1      THE COURT:  Anything else you want to argue -- or

2  argue about the procedural status?

3      MR. MAYNES:  No, Your Honor.  I think that's fairly

4  straightforward.

5      THE COURT:  Thank you.

6      Mr. Maynes, I'm going to tell you, I have no intent

7  of ruling on the merits here, so I don't think there's any

8  real need for you to address the arguments that the motion

9  otherwise fails to state a claim.

10      MR. MAYNES:  All right.  Thank you, Your Honor.

11      THE COURT:  Ms. Robinson, would you like to respond

12  to the arguments concerning my procedural concerns?

13      MS. ROBINSON:  On the procedural grounds, no, Your

14  Honor.  I think it's pretty clear that this should have been

15  brought by adversary proceeding.  And frankly, if in fact

16  there were not jurisdictional issues, which I would like to

17  just address briefly in rebuttal or reply, you know, if

18  there weren't issues then it probably would make sense, and

19  the Court had jurisdiction to address this, it would make

20  sense either to, you know, have it have been done as an

21  adversary proceeding or at this point agree that all

22  adversary proceeding rules, include Rule 7012, you know, are

23  going to apply.

24      But frankly, I think Mr. Maynes is acknowledging

25  that it should have been brought that way, and if there

1  weren't other issues maybe we would go down that path. But

2  frankly the Court just simply doesn't have jurisdiction over

3  this. You know, Mr. Maynes cites to *Pegasus*, but in *Pegasus*

4  the settlement agreement had specific terms that were then

5  incorporated into the plan that then the Court needed to

6  interpret and enforce.

7       We don't have that situation here. We have a

8  settlement agreement where because of the debtor's desire to

9  move Volkswagen and Audi out of their initial facility, there

10  was an agreement after a lot of discussion, that there would

11  be a new renovated facility built. There is nowhere in the

12  settlement agreement, nowhere in any of the discussions, in

13  any of the pleadings that were filed related to all this,

14  nowhere is there any mention, reference, discussion of a

15  drastic change in the allocation procedures. The allocation

16  procedures are part of the dealer agreements which are

17  incorporated into the settlement agreement and are

18  incorporated into the plan, and those allocation procedures

19  have been followed. They're based on what the debtor has

20  sold in the past, what the day's supply is for the other

21  dealers in the area, and all sorts of requirements. That's

22  how allocation is done. That's how allocation was done for

23  the years prior to the filing when the debtor was a

24  Volkswagen and a Audi distributor. And had the debtor

25  determined that in order to make this deal they needed to

1  have a drastic -- and I'm emphasizing it, a drastic change

2  in those procedures, which would be a six-fold or seven-fold

3  or however many fold increase in the number of cars that

4  were going to need to be supplied in order to justify this,

5  wouldn't you think that would be something that would be

6  discussed as opposed to -- and again, I don't dispute that

7  the statute to the -- if, in fact, we had required this,

8  then, you know, I don't dispute that the Idaho statutes

9  apply, but that was not what happened in this case.

10       Had the debtor truly felt that they needed to be

11  able to require an allocation of 240 to 300 cars when that

12  was nowhere near anything that had ever been done before, one

13  would think that that would be part of all of the discussions

14  and would have been specifically included as a provision of

15  the settlement agreement which then would be part of the

16  plan.  And then I would definitely agree that under *Pegasus*,

17  under *Ray*, under any of these cases, that would be related to

18  jurisdiction.  If the Court were going to interpret a

19  specific term that was in the settlement agreement, I agree.

20  That's not the case here.

21       The debtor now, realizing that it can't do what it

22  said it was going to do, is wanting to incorporate an

23  affirmative obligation as part of that settlement agreement

24  that simply isn't there.  So the Court just doesn't -- there

25  is no jurisdiction.  There's no arising in, there's no

1 arising under, and it isn't related to jurisdiction because
2 there is no close nexus when the debtor is trying to now
3 insert a plan provision -- or I'm sorry, a settlement
4 agreement for the provision that simply wasn't there.
5       Oh, and back to *Thickstun*, which was a BAP case
6 that Mr. Maynes referenced, *Thickstun* was just like *Pegasus*.
7 There was a specific provision in that plan that the Court
8 needed to interpret. *Thickstun* actually was a case where the
9 retention of jurisdiction provisions were very limited, and
10 initially the bankruptcy court said it didn't have
11 jurisdiction simply because the plan retention --
12 jurisdiction retention provisions wouldn't hail out [sic].
13       The court said sort of the opposite of what is
14 here, that even if the retention provisions didn't provide
15 jurisdiction the court needs to look at the code and the --
16 the statutory basis to see whether jurisdiction exists, so
17 despite the fact that the plan provisions wouldn't allow
18 jurisdiction, the court determined that in order to
19 interpret specific terms in that plan it would have
20 jurisdiction. It's completely distinguishable from this
21 case, Your Honor.
22       I think that covers my rebuttal, Your Honor.
23 Thanks.
24       THE COURT: Thanks very much, counsel. I appreciate
25 your arguments and comments.

1    Mr. Maynes, did you want to add anything else?

2    MR. MAYNES:  Just with the understanding that the

3  Court's not going to rule on the merits, I don't want to add

4  anything further, Your Honor.

5    THE COURT:  Okay.  Thanks very much.  I do not

6  intend to rule on the merits today, and so I'll deem the

7  argument concluded.

8    Once again, I want to thank counsel for their good

9  efforts here.  You've done a very, very good job, I think in

10 exploring these -- these issues.

11   I think in the interest of all concerned, including

12 the parties and the Court, I'm going to go ahead and deny

13 the motion to determine that the terms of the plan require

14 certain actions by Volkswagen and Audi, that's debtor's

15 number -- Docket Number 374 -- on procedural grounds at this

16 point in time.  And I'm going to explain to you why.

17   I'm not going to take the effort to put this in

18 writing, both because I think that would cause needless

19 delay, and because I think the outcome in my mind is very

20 clear.  I really wouldn't be adding, I think, much to the

21 law, and I think the application of the existing case law

22 here is fairly straightforward.

23   To the extent required by the rules, these will be

24 my oral findings of fact and conclusions of law.  Of course,

25 I reserve the right to enter further findings and conclusions

1 at a later date if I deem that necessary.

2        Just to comment on how we got here today. As I

3 indicated about a year or so ago the Court confirmed the

4 debtor's Chapter 11 plan, which included provisions dealing

5 with the debtor's relationship, business relationship with

6 Volkswagen and Audi. As I reviewed the plan, it was

7 basically a hybrid assumption of the existing contractual

8 arrangements between the debtor and the distributors,

9 together with incorporation of the terms of a so-called

10 settlement agreement, all of which then were thereby

11 incorporated into the Chapter 11 plan.

12        In May of 2011 debtor filed the present motion,

13 Docket Number 374, asking the Court to determine that the

14 distributors were basically, had violated the terms of the

15 plan and order confirming a plan by virtue of the fact that

16 they had failed to commit to supply the debtor with what the

17 debtor viewed was an adequate number of vehicles in order to

18 justify the debtor's construction and completion of a new

19 dealership facility to sell Volkswagen/Audi products, and

20 thereby jeopardized the debtor's ability to complete the

21 plan. The remedy requested was both declaratory in the

22 sense of asking the Court to make those legal determinations.

23 There was also a request for recovery of compensatory

24 amounts. I would call those damages, together with a

25 suggestion in there that this Court should find that

1   Volkswagen and Audi be held in contempt.

2           Perhaps I've got that backwards.  Perhaps the basic
3   request for relief there was for a finding in contempt, and
4   in connection with that then, recovery of compensatory
5   damages and an order of the Court that basically Volkswagen
6   and Audi comply with the debtor's view of their contractual
7   obligations.  I don't think that makes a great deal of
8   difference.

9           The motion was supported with affidavits and was
10  served on Volkswagen and Audi, who responded to that.  That's
11  my Docket Number 382.  A variety of defenses were asserted,
12  both jurisdictional, procedural, and on the merits.  In the
13  interest of judicial economy and good case management then,
14  the Court next examined this at a status conference convened
15  by the Court.  We conducted that on 22 June.  It was at that
16  point that after considering the pleadings and talking to
17  counsels that the Court directed Volkswagen/Audi to file a
18  motion to dismiss the debtor's motion.

19          Now one thing I want to mention here is that the
20  motion filed by the debtor in effect commenced a contested
21  matter under Rule 9014 of the Bankruptcy Code, not an
22  adversary proceeding.  And technically a motion to dismiss
23  would be appropriate under Rule 7012, which is not expressly
24  incorporated in the rules adopted for contested matters in
25  9014.

1        However, 9014 also allows the bankruptcy judge, in
2    my opinion, to designate additional adversary proceeding
3    rules to apply in particular contested matters.  And I would
4    interpret my order to Volkswagen/Audi asking it to file a
5    motion to dismiss as indeed thereby expressly incorporating
6    the motion to dismiss procedure under Rule 7012.
7        I'll tell you that I did get the motion, I did get
8    the affidavits.  I will tell you that I am approaching this
9    as a motion to dismiss for failure to state a claim, and that
10   therefore, I'm relying basically on the pleading, that is
11   the motion and the response.  I'm not relying upon the
12   information in the affidavits.
13       Having reviewed all that and now having listened to
14   -- considered your briefing and listened to your oral
15   arguments, I think Volkswagen and Audi's motion to dismiss
16   should be granted and an order entered denying the debtor's
17   motion.
18       I think that's correct because of two reasons.
19   Number one, I think the motion was improperly brought as a
20   contested matter and should have been the subject of an
21   adversary proceeding.  And number two, because the Court
22   believes it lacks the subject matter jurisdiction to
23   entertain the issues raised by the motion in this context.
24       First of all, with respect to an adversary
25   proceeding, I think when you look at the essential relief

being requested here, it's not really an action to punish

Volkswagen and Audi for what they've done, but is more an

action to declare the parties' contractual obligations under

the Chapter 11 plan, or as modified by the Chapter 11 plan,

and to award damages and an order mandating that Volkswagen

and Audi supply the requisite number of vehicles, whatever

that is, to debtor to sell.

So I don't think this is a classic contempt

situation. And under these facts and circumstances I think

the Court would -- I think it would be highly unlikely that

the Court would ever consider holding Volkswagen and Audi in

contempt for what is basically at bottom a breach of contract

dispute.

That's a good reason in my mind that the matter is

not a traditional contempt matter. More properly, it's of

the variety of an action for either declaratory judgment for

equitable relief and for recovery of damages, all of which I

would suggest would require commencement of an adversary

proceeding under Rule 7001. And because I think there, in

this context, is potential prejudice of Volkswagen and Audi

by continuing on a fast track process, and because I'm not

inclined in my discretion to simply treat this as an

adversary proceeding, I think that, in and of itself, is an

adequate legal basis for me to deny the motion, that is, it

should have been prosecuted by an adversary proceeding and

1  the Court declines to go forward with it as a contested

2  matter.

3        The second reason as an alternative basis for my

4  holding, however, is, I would find and conclude that on the

5  facts set forth in my record and in the motion in response,

6  it would appear that this Court does not have subject

7  matters jurisdiction to decide the issues and enter a final

8  judgment and order under the 28, U.S.C., Section 1334, and

9  the cases of the Ninth Circuit Court of Appeals and

10  Bankruptcy Appellate Panel construing that jurisdictional

11  grant in this context.

12        I want to point out by reminding everyone that this

13  is a fair -- this is a subset of the normal jurisdictional

14  analysis that bankruptcy courts engage in in deciding whether

15  to proceed generally under 1334 because this is an issue

16  dealing with a more narrow topic, and that is the post-

17  confirmation jurisdiction of the bankruptcy court to

18  entertain an action in a Chapter 11 case.

19        While the Chapter 11 case is open in this case, I

20  would suggest that two things indicate that this is not a

21  matter that simply arises in connection with the pending

22  Chapter 11.

23        Number one, as I noted, we confirmed a plan, I

24  think it's been over a year ago now, and that plan is, from

25  my perspective, is a final judgment and order, and the

1 parties are bound by its terms in the same fashion as any
2 confirmed Chapter 11 plan. In other words, I doubt at this
3 point it would be appropriate for the Court to consider any
4 modifications or changes. And so I think this is truly a
5 post-confirmation situation.

6          Now the Chapter 11 case is still open, however, my
7 review of the record, and I think it's accurate, is largely
8 open to accommodate what I'll call housekeeping matters, that
9 was a final approval of fees and costs, and to accommodate
10 the debtor's various pending objections to claims of
11 creditors, a procedure that was indeed contemplated by the
12 plan.

13          The Court is anxious to close the case upon
14 conclusion of those matters. I don't think the pendency of
15 this motion would be an independent basis to motivate the
16 Court to want to keep this case open.

17          The issues raised by the debtor's motion here do
18 not invoke the Court's arising in or arising under
19 jurisdiction under 1334(b). There are, as far as the Court
20 can see, no substantive issues of bankruptcy law implicated
21 in this dispute.

22          At bottom, this dispute arises because of the
23 debtor's argument that the distributors in this case have
24 violated the terms of the parties' pre-bankruptcy contracts,
25 the settlement agreement, and Idaho state statutes, all of

1   which the debtor points out are effectively incorporated

2   into the debtor's Chapter 11 plan.  While I don't quibble

3   with the fact that Chapter 11 plans in general, and this one

4   in particular do incorporate those kinds of legal

5   obligations,  my point here is that there is no separate and

6   distinct legal obligation that the debtor has pointed to

7   arising under the bankruptcy code that would require the

8   distributors to supply vehicles -- or a specific number of

9   vehicles from the distributors to the debtor to sell in this

10  case.

11          This is just -- this is just not a bankruptcy law

12  issue, and so those cases which recognize post-confirmation

13  jurisdiction because the issues involve peculiar issues of

14  bankruptcy law and because of the special expertise, assuming

15  we have expertise of bankruptcy judges concerning those

16  issues that's -- that's not this case.

17          This is also not a case where the Court is being

18  called upon, in my view, to make any particular

19  interpretation of the terms of a confirmed plan.  I don't

20  think there's any doubt that the confirmed plan incorporated

21  the terms of the parties' prior agreements, their settlement

22  agreements, and their obligations under state law.  And

23  there's no doubt that the bankruptcy code provisions require

24  -- or bind the parties to the terms of a confirmed plan and

25  require the parties to perform.

1    However, that's something very different than

2 saying that the Court needs to interpret the terms of the

3 plan.   The only interpretation I would need to make is, is

4 Volkswagen and Audi out of compliance with the plan based

5 upon their violation of the contracts or state law?  And so

6 this isn't a case where we've got an ambiguous provision of

7 a confirmed Chapter 11 plan that only the bankruptcy judge,

8 as the judge who entered the order confirming the plan, is

9 best suited to construe.  This is not that case.

10    While there are some general and rather amorphous

11 and brief references in the plan to retention of jurisdiction

12 by the bankruptcy court, in reviewing those I would find that

13 none of those are of the type that would cover this

14 particular kind of dispute.  I would also point out that

15 there is no express specific provision retaining jurisdiction

16 of the Court.  This is not arising in or arising under

17 jurisdiction.

18    The question then becomes whether or not the Court

19 should exercise, or could exercise jurisdiction under the so-

20 called related two provisions of 1334(b).  I would find that

21 under the Ninth Circuit case law clearly the court should

22 not.

23    In particular, I would find that this case is

24 controlled by the Ninth Circuit's decision in what I call

25 *Battleground*, some call it *Ray*.  And this case is

1  distinguishable from the Ninth Circuit's decision in *Pegasus*.

2  This is, as was the case in *Battleground*, basically the

3  bankruptcy court being asked to interpret the parties' state

4  law rights.  This is not a *Pegasus* situation where the

5  bankruptcy court is being asked to enforce a specific

6  particular arised obligation created and imposed by a

7  Chapter 11 plan.  And so, frankly, I don't really think I

8  need to say a whole lot more than that.

9      I think *Battleground* sends a pretty clear message

10  to this Court that it ought to be cautious before proceeding

11  in this post-confirmation context with the exercise of

12  jurisdiction, lest we tread on the rights of state courts to

13  be involved in this.

14      I think, in my view, that in light of the Ninth

15  Circuit's decision, this would be a case -- this would be a

16  lawsuit that the Ninth Circuit would want this Judge to say,

17  you know, you ought to bring in state court.

18      I've been turned around in my thinking in that

19  regard and have gotten the message sent by *Battleground*

20  because if the two of you weren't aware of it, maybe I

21  mentioned it before, but I was on the BAP panel that

22  sustained the jurisdiction of the bankruptcy case in

23  *Battleground* and that was reversed by the Ninth Circuit in

24  its decision.

25      So for the record, message received and understood.

1  State law disputes, even if they arise through the vehicle

2  of a confirmed Chapter 11 plan, after confirmation of the

3  plan belong primarily in state court.

4       So for those two reasons I would effectively grant

5  the motion to dismiss and order that the motion filed by the

6  debtor in this case be denied.

7       Now here's what I'm not deciding.  I'm expressing

8  no view.  I do not intend this to be a final order in any

9  respect concerning the merits of the claims being asserted by

10  the debtor in the motion again Volkswagen and Audi.  I know

11  Volkswagen/Audi in its motion to dismiss has gone to great

12  lengths, and again here in oral argument, suggesting that

13  there is simply no legal basis for the debtor's claim.  I

14  simply take no position on that and express no view

15  whatsoever.

16       It would not be my intent that the order of this

17  Court denying the debtor's motion in the Chapter 11 case be

18  construed as a final adjudication on the merits of that

19  claim for purposes of any sort of claim or issue preclusion

20  kind of argument.

21       So having said that, I will enter an order granting

22  the motion to dismiss and denying the debtor's motion.  And

23  from my perspective, at least as the trial judge here, that

24  matter will be deemed at an end.

25       At this point I'll ask if there are any questions

```
 1   or comments.

 2          Ms. Robinson?

 3          MS. ROBINSON:  Your Honor, will the Court be

 4   preparing the order or do you need us to do any --

 5          THE COURT:  You know, I'll go ahead and -- it won't

 6   be very fancy, Ms. Robinson, but I'll go ahead and do it

 7   myself if you don't mind.

 8          MS. ROBINSON:  It doesn't have to be fancy, Your

 9   Honor.  Thank you.

10          THE COURT:  Yeah, I think the rule says it doesn't

11   have to be fancy, Ms. Robinson, but I appreciate your

12   accommodation there.

13          Mr. Maynes, any questions?

14          MR. MAYNES:  No, Your Honor.  I think you've been

15   very clear.

16          THE COURT:  Mr. Spinner, you've been on the phone.

17   Did you want to ask any questions?

18          MR. SPINNER:  No, Your Honor.  I'm fine.

19          THE COURT:  Okay.  If all goes well we'll likely

20   have this order later today or perhaps tomorrow.

21          Thanks very much.  We're signing off.  Thanks again

22   for accommodating my schedule.

23          COUNSEL:  Thank you, Your Honor.

24          PROCEEDINGS CONCLUDED AT 11:43:05 A.M.

25                  * * * * * * * * * *
```

**CERTIFICATION**

I (WE) CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM
THE ELECTRONIC SOUND RECORDING OF THE PROCEEDINGS IN THE
ABOVE-ENTITLED MATTER.

**NW TRANSCRIPTS, LLC**
**IDAHO DIVISION**
**P.O. BOX 890**
**NAMPA, IDAHO 83653**
**(208) 908-7998**
**gayle@nwtranscripts.com**

/s/ Gayle M. Lutz
FEDERALLY CERTIFIED MANAGER/OWNER

Kari Riley                                          9/19/11
TRANSCRIBER                                         DATE