UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| B.A. WACKERLI, CO., a corporation,<br><br>    Plaintiff,<br><br>      v.<br><br>VOLKSWAGEN OF AMERICA, INC.,<br>a corporation; and AUDI OF AMERICA,<br>INC., a corporation,<br><br>    Defendants. | Case No. 4:12-cv-00373-BLW<br><br>MEMORANDUM DECISION AND<br>ORDER |

## INTRODUCTION

The Court has before it Plaintiff B.A. Wackerli, Co.'s motion to remand (Dkt. 19) and motion to stay (Dkt. 20). The motions arise from the effort of Defendants Volkswagen of America, Inc. and Audi of America, Inc. to terminate their dealer franchise agreement with Wackerli because, they claim, Wackerli breached its commitment to build a new dual-brand dealership facility by March 2012. Wackerli asks the Court to stay the Idaho Transportation Department's administrative order finding that

Volkswagen and Audi had good cause to terminate the dealer franchise agreements while this Court reviews the decision.  In the alternative, Wackerli asks the Court to enjoin Volkswagen and Audi's termination of the dealer agreements.  Wackerli's motions were heard on August 3, 2012, the parties were given the opportunity to present evidence, and post-hearing briefs were submitted.  Having reviewed the relevant law and the parties' submissions, the Court will deny Wackerli's motion to remand and motion to stay or for injunctive relief for the reasons set forth below.

## BACKGROUND

### 1.  Franchise Relationship and Settlement Agreement

Wackerli is a private dealer group in Idaho Falls, Idaho, where it operates three separate dealerships: a GMC-Buick-Cadillac dealership, aVolkswagen and Audi dealership, and a Subaru dealership.  *Thomas Decl*., Ex. A, Dkt. 15.  Defendants Volkswagen of America, Inc. and Audi of America, Inc. are the U.S. distributors for Volkswagen and Audi vehicles, respectively.

Wackerli's right to market the Volkswagen and Audi brands arises from separate dealer agreements with each manufacturer.  Those agreements contain various addenda that are incorporated into the dealer agreements, including ownership addenda and dealership premises addenda.  *Id.*, Exs. B, C. As discussed in more detail below, the dealer agreements also include facility addenda, which became part of the dealer agreements through a settlement agreement entered into during Wackerli's bankruptcy proceedings.  Volkswagen and Audi seek to terminate the dealer agreements because

Wackerli allegedly breached the facility addenda incorporated through the bankruptcy settlement agreement.

Before Wackerli filed for bankruptcy, Wackerli operated the Volkswagen, Audi, and Subaru dealership in a shared facility.  Each separate dealer agreement between Wackerli and Volkswagen, Audi, and Subaru approved the multi-branded dealership premises and location.  *Id.*  The agreements precluded Wackerli from relocating its dealership operations without prior written consent of the manufacturer and full compliance with the respective dealer agreements.  *Id.* Specifically, both Volkswagen and Audi had the right to terminate the dealer agreements if Wackerli changed the location of the dealership without Volkswagen and Audi's prior written consent.  *Id.*

In February 2009, Wackerli filed for Chapter 11 bankruptcy protection.  Concerned with Wackerli's ability to perform its dealer agreement, Subaru sought to terminate its agreement with Wackerli.  Subaru ultimately decided against terminating Wackerli, and Wackerli and Subaru reached a settlement agreement. *Id.*, Ex. E. Pursuant to the settlement agreement, Subaru agreed not to terminate Wackerli's dealer agreement in exchange for (1) Wackerli agreeing to displace Volkswagen and Audi from the shared facility, and (2) Wackerli agreeing to renovate the shared facility into an exclusive Subaru dealership meeting Subaru's facility and image standards.  *Id.*, Ex. F at Ex. A.

Wackerli entered into this agreement with Subaru, including its promise to displace Volkswagen and Audi from the premises, without first obtaining the consent of Volkswagen or Audi.  Indeed, Wackerli did not even inform Audi or Volkswagen before

agreeing to displace them with an exclusive Subaru dealership.  When Wackerli sought

approval from the bankruptcy court of Wackerli's assumption of the dealer agreements,

the manufacturers objected.  *Id.*, Ex. G.  Among the cited concerns was the proposal to

relocate the Audi-Volkswagen dealership to an existing Wackerli used car facility. *Id.*

According to Volkswagen and Audi, they would have never approved use of the used car

facility as the location for their dealerships, because it is inferior to the facility they

previously shared with Subaru. *Id.*, Ex. A (Tr. 279:6-13).

 Volkswagen and Audi, despite their expressed reservations, agreed to Wackerli's

assuming the dealer agreements and to a temporary relocation to the used car store.  In

exchange for Volkswagen and Audi's agreeing to the temporary relocation and

Wackerli's assumption of the dealer agreements, Wackerli agreed to construct a new

"Dual-Branded" dealership facility for Volkswagen and Audi that would meet both

brands' facility standards.  *Id.,* Ex. D at 1, E-1, F-1; *see also id.*, Ex. A (Tr. 58:2-59:7,

279:6-281:9). This agreement allowed Wackerli to avoid breaching its settlement with

Subaru.

 On April 28, 2010, the parties executed a Settlement Agreement outlining these

terms.  *Id.*, Ex. D at 2, ¶ 5.  The Settlement Agreement included a provision underscoring

the temporary nature of the relocation to the used car premises: "in no event shall debtor

be permitted to carry out Volkswagen or Audi operations at the Temporary Sales Facility

or the Temporary Service Facility after March 31, 2012."  Wackerli also agreed that

failing to complete its new Volkswagen and Audi facility by March 31, 2012 would be good cause for termination.  *Id.*

After signing the settlement agreement with Volkswagen and Audi, Wackerli made no meaningful progress on the new facility because it was focused on completing renovations for the Subaru facility.  Wackerli then stopped work on its facility project in the fall of 2010 because, as Steven Wackerli testified in an affidavit filed in bankruptcy court in May 2011, Wackerli believed that its vehicle inventory "was [in]sufficient to support the ongoing expenses associated with the new facility development and construction." *Id.* at Ex. J, ¶ 15.  Wackerli eventually re-engaged the facility construction process, but by that time it was too late to complete construction by March 31, 2012, as promised.  In fact, Wackerli had only completed the preliminary design phase by January 2012.  *See id.*, Ex. A (Tr. 420:22-422:14). When it became clear Wackerli would not complete construction of the facility by March 2012, VW and Audi notified Wackerli that they were going to terminate the franchise. *Id.*, Exs. K, L.

## 2. Administrative Proceedings

On February 2, 2012 Wackerli filed protest actions with Idaho Transportation Department, contesting Audi and Volkswagen's decision to terminate the dealer franchise agreements. Pursuant to Idaho Code § 49-1617(3), Volkswagen and Audi's response papers triggered the Transportation Department's statutory obligation to decide Wackerli's protest actions within 120 days, or by July 5, 2012.

## A. *Preliminary Orders*

The Department assigned the protest actions to Hearing Officer Stephen Bywater, who conducted a two-day hearing on April 25-26, 2012, and issued Preliminary Orders finding in favor of Volkswagen and Audi on June 8, 2012.  Volkswagen and Audi point to several findings and conclusions contained in the Preliminary Orders, which they deem as important to these proceedings:

- "By January 2012 it was not possible for Wackerli to finish its facility project by March 31, 2012. Wackerli had therefor breached its facility commitment."  *Id.*, Exs. M & N at FOF 32 (record cite omitted);

- "Wackerli's agreement that good cause would exist in the event of a breach of its facility commitment constituted a material part of the consideration that VWoA and AoA[1] bargained for in negotiating the Settlement Agreement." *Id.*, Exs. M & N at COL 9;

- "Under Idaho law, courts (and thus executive branch agencies acting in a quasi-judicial role) are not permitted to read bargained-for consideration out of an agreement." *Id.*, Exs. M & N at COL 9;

- "[VWoA and AoA] ha[ve] met [their] burden of establishing good cause…for the termination of the dealer franchise agreement with Wackerli based upon Wackerli's failure to comply with a provision of the franchise agreement which is both reasonable and of material significance to the franchise agreement relationship."  *Id.*, Exs. M & N at COL 12;

- "The evidence does not support a finding of lack of good faith on the part of VWoA or AoA in the vehicle allocation procedures and policies they followed after the execution of the Settlement Agreement." *Id.*, Exs. M & N at COL 19;

- "[N]or does the evidence support a finding that VWoA or AoA's vehicle allocation policies in performance of the Settlement Agreement inhibited or

---

[1] The Court here refers to VWoA as Volkswagen and AoA as Audi.

rendered impractical or impossible the performance of the Settlement Agreement by Wackerli." *Id.*, Exs. M & N at COL 19;

- "The evidence does not support a finding of lack of good faith on the part of VWoA or AoA in their dealings with Wackerli regarding the design or construction of the new dual-branded dealership facility after Wackerli re-started the process in August of 201." *Id.*, Exs. M & N at COL 20.

- "[N]or does it support a finding that VWoA or AoA's actions or requirements in the facility design or construction approval process inhibited or rendered impractical or impossible the performance of the Settlement Agreement by Wackerli." *Id.*, Exs. M & N at COL 20

### B. Review of Preliminary Orders

On Friday, June 29, 2012, Wackerli petitioned the Director of ITD for review of the Preliminary Orders. *See id.*, Ex. R. Wackerli's petition for review was less than two pages in length and requested "that the Director review the Hearing Officer's conclusions of law, including, but not limited to, Conclusions of Law 17, 18, and 19." *Id.*, Ex. R at 2. Wackerli also requested that the Director review the portions of the Hearing Officer's Decision on Reconsideration addressing Wackerli's burden of proof on certain disputed issues. *Id.*

On June 25, 2012, the Hearing Officer issued a decision denying Wackerli's petition to reconsider. On July 13, 2012, after Wackerli had filed and the Department had granted an emergency motion to stay termination of the dealer agreements, the Director of the Transportation issued an Order of Dismissal and Dissolution of Stay. The Director adopted the Preliminary Orders as the final order of the Department.

### 3. This Action

On July 12, 2012, the same day Wackerli filed the emergency motion to stay and the day before the Department issued its final order, Wackerli filed this case in state court, alleging breach of the dealer franchise agreement and seeking to enjoin Audi and Volkswagen's termination of the franchise agreement.  In the original complaint, Wackerli (1) sought a preliminary injunction prohibiting termination of the dealer agreements until the Transportation Department issued a final order in the administrative proceedings, and (2) asserted a claim for breach of the settlement agreement, seeking damages for Volkswagen and Audi's alleged failure to allocate a sufficient number of vehicles to Wackerli to make the facility construction economically viable.  The state court entered a TRO without a hearing.

Almost a week later, on July 16, 2012, Volkswagen and Audi moved to dissolve the TRO on the grounds that the administrative process had concluded.  Wackerli responded by filing an amended complaint adding a new claim for judicial review of the Final Order.  Shortly after a hearing on the motion to dissolve the TRO, Wackerli filed a motion for leave to file a Second Amended Complaint, naming the Transportation Department as a new defendant.

On July 20, 2012, the state court denied the motion to dissolve the TRO, and the day before the scheduled preliminary injunction hearing, Audi and Volkswagen removed the case to this Court.  On July 24, 2012, this Court, by agreement of the parties, entered an order extending the TRO until Friday, August 3, 2012.

Because Audi and Volkswagen removed this action before the state court could decide the motion to amend, the operative pleading at the time of removal was the Amended Complaint.  After Volkswagen and Audi removed this action, however, Wackerli attempted to dismiss its petition for review and initiated a new state court action by filing a one-count complaint against Volkswagen, Audi, and the Transportation Department, seeking judicial review of the Final Order, as well as a motion for a new TRO and a stay pursuant to Idaho Code § 67-5274. *See* Thomas Decl., Ex. V. Volkswagen and Audi removed this second state court action to this Court.  It has been assigned Case Number 4:12-cv-00391-BLW.

Wackerli now asks this Court to stay the Transportation Department's administrative order finding that Audi and Volkswagen had good cause to terminate the franchise agreement pending judicial review of the decision.  In the alternative, Wackerli asks the Court to enjoin Audi and Volkswagen from terminating the dealer franchise agreements.

## ANALYSIS

### 1. Jurisdictional Issues

As a threshold issue, the Court must decide whether it has subject-matter jurisdiction to review a decision of a state administrative agency when the review is on-the-record rather than de novo.  Wackerli initially suggested that this Court may not have jurisdiction to review the Transportation Department decision.  Now Wackerli concedes that jurisdiction likely exists.  The Court agrees.

In *BNSF Railway Company v. O'Dea*, the Ninth Circuit held that the district court had diversity jurisdiction over an action involving on-the-record review of a Montana state administrative agency decision.  572 F.3d 785, 787 (9th Cir. 2009).  In this case, no one disputes that diversity jurisdiction existed at the time of removal.  Therefore, under *BNSF Railway*, this Court's diversity jurisdiction extends to review of the Idaho Transportation Department decision.

Wackerli, however, filed a motion to amend in state court seeking to add the Transportation Department as a party, and Wackerli contends that the addition of the Department as a party would destroy diversity.  This argument is unavailing for two reasons.  First, the motion to amend has not been granted, so the Department is not yet a party.  Second, even if the Transportation Department were joined as party, this would not destroy diversity because the Department is not a "real party in interest."

A court's analysis of "real party in interest" should focus on the "essential nature and effect of the proceeding." *Ford Motor Co. v. Dept. of Treasury,* 323 U.S. 459, 464 (1945).  The essential nature of this proceeding is the termination of dealer franchise agreements between an in-state dealer and two out-of-state car manufacturers.  If Wackerli wins, it may be entitled to an injunction preventing Audi and Volkswagen from terminating the dealer franchise agreement or monetary damages stemming from Defendants' breach of the parties' agreements.  If Defendants prevail, they will be allowed to terminate the dealer franchise agreement and will not have to pay Wackerli any damages.  Either way the Transportation Department will not be affected by the

judgment.  The Department is a neutral party that will not win or lose anything; thus it does not have a stake in the outcome.

Wackerli also contends that this Court should apply abstention principles and remand the case to state court.  The Court acknowledges that "obligations of comity, and respect for the appropriate balance between state and federal interests" are important principles that may counsel a federal court to abstain from deciding an important state law issue.  *Quakenbush v. Allstate Ins.,* 517 U.S. 706, 716 (1996).  But "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Colo. River Water Conserv. Dist. v. U.S.,* 424 U.S. 800 (1976).   Indeed, "federal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress." *Quakenbush v. Allstate Ins.,* 517 U.S. 706, 716 (1996).

In this case, beyond citing general abstention principles, Wackerli does not specify which abstention doctrine should apply.  Volkswagen and Audi suggest that Wackerli implicitly relies on *Burford* abstention.  *Burford v. Sun Oil Co.,* 319 U.S. 315 (1943).  Even if so, however, the circumstances of this case do not justify applying the "extraordinary and narrow exception to the duty of the District Court to adjudicate a controversy properly before it," which *Burford* represents. *City of Tuscon v. U.S. West Commc'ns, Inc.*, 284 F.3d 1128, 1133 (9th Cir. 2002).

A federal district court may only apply the *Burford* abstention doctrine if: (i) the state chose to concentrate suits challenging the actions of the agency involved in a particular court; (ii) federal issues cannot be separated easily from complex state law

issues with respect to which state courts might have special competence; and (iii) federal review might disrupt state efforts to establish a coherent policy. *Id.* Those elements cannot be met here.

First, the state has not consolidated review of Transportation Department decision in a particular court. Second, the issues in this case do not involve complex state law issues that cannot be easily separated from federal issues – this is essentially a straightforward breach of contract case. And, third, there is nothing to indicate that this Court's review of the agency decision would disrupt state efforts to establish a coherent policy. This breach of contract case does not involve a complicated regulatory scheme like the scheme the Supreme Court sought to avoid in *Buford.* Because none of the *Buford* requirements are met here, the Court will not apply *Buford* abstention.

Nor does the Court believe any other abstention principles apply here. As noted above, Wackerli fails to discuss any abstention principle in particular and the facts here do not appear to fit into any of the exceptional circumstances making abstention the prudent path to follow. Neither applying the proper deference to a government agency decision nor applying Idaho law in a diversity case is an unfamiliar or burdensome task. Therefore, the Court finds that dismissal or remand is not appropriate based on abstention principles.

Finally, the Court agrees with the parties that the fact the settlement agreement between Wackerli and Audi and Volkswagen arose out of bankruptcy proceedings has no bearing on whether the Court has jurisdiction to hear this case.

**2.  Judicial Stay or Injunction**

   *A.  Standard of Review for Judicial Stay*

Wackerli asks the Court to stay the Transportation Department's final order

pending resolution of Wackerli's petition for review of the Department's order.  Under

the Idaho Administrative Procedure Act, the filing of a petition of review does not

automatically stay the effectiveness or enforcement of the agency action. I.C. § 67-5274.

The reviewing court, however, may order "a stay upon appropriate terms." *Id.*

Wackerli argues that "appropriate terms" is not synonymous with irreparable

harm, likelihood of success, or any other standard gleaned from Federal Rule of Civil

Procedure 65.  But Wackerli provides no legal authority for this position.  And to the

Court's knowledge, no Idaho authority providing standards for determining when a stay

is appropriate exists.

In cases when no clear Idaho authority exists, courts may look to other state and

federal courts for guidance.  *See J.R. Simplot Co., Inc. v. Idaho State Tax Comm'n*, 820

P.2d 1206, 1212-1219 (Idaho 1991).  Federal courts, when deciding to issue a stay

pursuant to a similar provision under the federal Administrative Procedures Act, 5 U.S.C.

§ 705, apply the basic preliminary injunction standard.  *See Humane Soc'y of the U.S. v.*

*Gutierrez*, 558 F.3d 896, 896 (9th Cir. 2009).  Audi and Volkswagen urges that the four-

part test for granting a preliminary injunction should likewise apply in this case.

The provisions of the federal stay statute, however, differ from the Idaho statute in

one key respect: under the federal statute the stay must be "necessary to prevent

irreparable injury."  Given this key difference, the Court believes that the federal test should not be imposed to control absolutely the determination of a stay motion in Idaho. *Public Employment Relations Bd. v. Stohr*, 279 N.W.2d 286, 291 (Iowa 1979).  On the other hand, the preliminary injunction standard lends itself as a logical starting point that district courts and agencies may use in determining when a stay is appropriate. *Id.*

The preliminary injunction standard includes the following prerequisites: (1) that the party seeking injunctive relief is likely to succeed on the merits; (2) that they are likely to suffer irreparable harm if an injunction is not issued; (3) that the balance of equities tips in their favor; and (4) that an injunction is in the public interest. *Center for Food Safety v. Vilsack*, 636 F.3d 1166, 1172 (9th Cir. 2011).

In this case, the Court would likely find that Wackerli has met three of these four perquisites.  Although Wackerli has multiple dealerships, the closing of the Volkswagen/Audi dealership would cause irreparable harm to that dealership, and Wackerli presented credible evidence that the closing of the Volkswagen/Audi dealership would also harm his other dealerships.  Idaho Falls is a small community where relationships matter.

Second, although Audi and Volkswagen undoubtedly have shown that they have an interest in their representative dealerships maintaining certain facility standards, the likely harm to Wackerli if a stay is not granted substantially outweighs any potential harm to Audi and Volkswagen arising from the Wackerli Audi/Volkswagen dealership remaining open at its temporary location for a few more months.

Third, the granting of an injunction would serve the public interest.  If the

Wackerli Audi/Volkswagen dealership closes, Audi and Volkswagen customers will have

to drive or have their cars towed hundreds of miles to obtain warranty service.

Having decided three of the four perquisites in Wackeri's favor, the granting of

Wackerli's request for a stay turns on whether Wackerli is likely to succeed on the merits

of its petition for judicial review.

### B.  Likelihood of Success on the Merits

The Idaho Administrative Procedures Act (IDAPA) governs the review of local

administrative decisions. *Comer v. County of Twin Falls*, 942 P.2d 557, 561 (1997).

Under the IDAPA, judicial review of a final agency order is both narrow in scope and

deferential in application.  A reviewing court "must affirm the Department's action . . .

unless the court determines that the agency's findings, inferences, conclusions or

decisions are: (a) in violation of constitutional or statutory provisions; (b) in excess of the

statutory authority of the agency; (c) made upon unlawful procedure; (d) not supported

by substantial evidence on the record as a whole; or (e) arbitrary, capricious, or an abuse

of discretion." *Wheeler v. Dep't of Health & Welfare*, 207 P.3d 988, 991 (Idaho 2009)

(quoting Idaho Code § 67-5279(3)).  Moreover, "[i]t is the burden of the party contesting

the Department's decision to show how the Department erred in a manner specified under

I.C. § 67–5279, and to establish that a substantial right has been prejudiced." *Id.*

Wackerli, in this case, argues that the Department's decision finding that

Volkswagen and Audi had good cause to terminate the dealer agreements with Wackerli

should be reversed because it was "made upon unlawful procedure" and was "not supported by substantial evidence on the record as a whole." But Wackerli fails to show that he is likely to prevail on any of these asserted grounds for reversal.

*(1) Unlawful Procedure*

At oral argument, Wackerli asserted that the Department's decision should be reversed because the Director for the Transportation Department merely "rubber stamped" the hearing officer's findings and conclusions. But the evidence shows the Transportation Department, in issuing its final order, fully complied with its own procedures and with the basic requirements of due process. The hearing officer conducted a two-day hearing, and then after full briefing, rendered a thorough and reasoned decision. The Director then adopted the hearing officer's preliminary orders on July 13, 2012, after recognizing that the 120-day deadline for rendering a final decision on Wackerli's protests had passed. Moreover, Wackerli has had the opportunity to present evidence to this Court through written submissions and live testimony. Under these circumstances, the Court cannot find that the Transportation Department violated any procedure set forth in the Dealer Act or the Idaho Administrative Procedures Act.

*(2) No Substantial Evidence*

In his petition for review before the Transportation Department, Wackerli objected to several conclusions made by the hearing officer. He renews those objections in his petition for review here. This Court, however, does not engage in a free review of the Department's decision. As noted above, the Court must afford deference to the agency

decision. *See, e.g.*, *Stevenson v. Blaine Cnty.*, 9 P.3d 1222 (Idaho 2000). The Court does not substitute its judgment for that of the agency as to the weight of the evidence presented. I.C. § 67–5279(1). The Court instead defers to the agency's findings of fact unless they are clearly erroneous. *Castaneda v. Brighton Corp.*, 950 P.2d 1262, 1265 (1998). In other words, the agency's factual determinations are binding on the reviewing court, even where there is conflicting evidence before the agency, so long as the determinations are supported by competent evidence in the record. *Id.* Keeping these standards in mind, the Court will consider Wackerli's objection to the hearing officer's conclusions.

Wackerli first asserts that the "most egregious error committed by [the hearing officer] is his bare and conclusory finding that Idaho Code §§ 49-1613(2)(i) & (j) do not apply in this case." According to Wackerli, the hearing officer's conclusion that those provisions did not apply precluded Wackerli from asserting "the affirmative defenses of excuse from performance and lack of good faith and fair dealing vis-a-vis the Settlement Agreement by VW/Audi." *Pl.'s Opening Br.* at 9, Dkt. 13

Idaho Code § 49-1613(2)(i) makes it unlawful for a manufacturer "to require, attempt to require, coerce, or attempt to coerce, any new vehicle dealer in this state to…[e]xpand facilities without a written guarantee of a sufficient supply of new vehicles so as to justify an expansion, in light of the market and economic conditions." Similarly, Idaho Code § 49-1613(2)(j) prohibits a manufacturer from requiring or coercing a dealer to "[m]ake significant modifications to an existing dealership or to construct a new

vehicle dealership facility without providing a written guarantee of a sufficient supply of new vehicles so as to justify modification or construction, in light of the market and economic conditions."

The hearing office found neither of these provisions applied to this case because the evidence did not support a finding that Volkswagen or Audi "required" or "coerced" Wackerli into building a new facility.  The Court views this as a factual finding and therefore affords it great deference.  But even if the Court were to construe it as a legal conclusion, it would reach the same result.

A manufacturer must only provide "a written guarantee of a sufficient supply of new vehicles so as to justify an expansion" if it "requires" or "coerces" a dealer to expand or build a new facility.  I.C. § 49-1613(2)(i)&(j).  Here, however, Audi and Volkswagen did not require Wackerli to build the new facility. It was Wackerli that made the new facilities agreement necessary because of its agreement with Subaru.  So, the genesis of the requirement came from Wackerli's needs, not Volkswagen or Audi's demands. Negotiation of a contract to build new facilities under these circumstances does not equate to "requiring" or "coercing" Wackerli to build a new facility.

Courts interpreting similar statutory provisions have found a contract term, negotiated at arms-length, does not amount to a "requirement" or "coercion" as meant in Idaho Code § 49-1613(2)(j). *See, e.g., Empire Volkswagen, Inc. v. World–Wide Volkswagen Corp.*, 814 F.2d 90, 96–97 (2d Cir.1987) (collecting cases holding that threats to take action authorized by parties' contract do not constitute coercion).  In

*Empire Volkswagen,* the Second Circuit held that the franchisor could enforce the terms of its agreement with the dealer to construct a separate facility without violating the dealer statute so long as the contract terms were valid and reasonable. *Id.* Indeed, "[i]t is generally accepted that a distributor's enforcement of the terms of its bargained-for agreement with a dealer is not 'coercion.'" *Jaguar Land Rover N.A., LLC v. Manhattan Imported Cars, Inc.,* 738 F. Supp.2d 640, 652-53 (D. Md. 2010).

Likewise, in *Scuncio Motors, Inc. v. Subaru of New England, Inc.,* the court rejected a dealer's argument that the manufacturer had violated the dealer statute by attempting to enforce a valid agreement with the dealer to construct a new facility. 555 F.Supp. 1121, 1128 (D.C.R.I. 1982).555 F.Supp. 1121, 1128.   The dealer argued that the proposed termination of the dealer franchise agreement violated a provision of Rhode Island's Dealers' Law, which limited a manufacturer or agent from requiring dealers to expand their facilities unless the manufacturer guaranteed a sufficient supply of new cars to justify the expansion. *Id.* at 1125.   Interpreting the statute, the court concluded that the verb "to require" implied something mandatory. *Id.* It then found that the defendant did not impose on the dealer a mandatory obligation to relocate its facilities but instead the parties negotiated the agreement concerning relocation. *Id.* Based on this finding, the court refused to find that the defendant "required" the dealer to relocate and expand its facilities, as meant by the dealer statute. *Id.*

The Court agrees with the reasoning in *Empire Volkswagen* and *Scunio*.  More importantly, it defers to the hearing officer's conclusion that Idaho Code §§ 49-1613(2)(i)&(j) do not apply to the circumstances of this case.

The Court also is not persuaded the hearing office erred in concluding that Wackerli bore the burden to prove Volkswagen and Audi failed to act in good faith. Wackerli makes a somewhat convincing argument that Volkswagen and Audi – as the parties challenging the status quo – should be required to prove that they have acted in good faith in seeking to terminate the dealer agreements.  But assigning the burden to prove good faith on Volkswagen and Audi is not consistent with either the statutory language or the common law.

Idaho Code § 49-1617 expressly places the burden of proving good cause to terminate a dealer agreement on the manufacturer when a dealer files a protest with the Transportation Department.  However, the statute is silent as to which party must prove lack of good faith.  The Idaho legislature could have easily stated that the manufacturer should have the burden of proving good cause *and* good faith; but it did not.  Principles of statutory construction therefore counsel that the burden of proving a lack of good faith should lie with the dealer: "where the legislature expressly states one thing it is deemed to have excluded another, *expressio unis est exclusio alterius.*"  *See Nebeker v. Piper Aircraft Corp.*, 747 P.2d 18, 23 (1987).

Placing the burden of proving good cause on the manufacturer and the burden of proving lack of good faith on the dealer also accords with the common law. To illustrate,

in this case, Volkswagen and Audi seek to terminate the dealer agreements on the grounds that Wackerli breached a material and reasonable provision of those agreements. Under Idaho law, a party asserting a breach of contract carries the burden of proving that claim. *See, e.g., Idaho Power Co. v. Cogeneration, Inc.*, 9 P.3d 1204, 1213 (Idaho 2000). Thus, even absent the dealer statute provision expressly assigning the burden of proving good cause on the manufacturer, Volkswagen and Audi would be assigned this burden under the common law because they claim that Wackerli breached the dealer agreement and that is why good cause to terminate exists.

Likewise, under the common law, Wackerli would be assigned the burden of proving Audi and Volkswagen's alleged lack of good faith.  Wackerli contends that Volkswagen and Audi breached the settlement agreement first and therefore Wackerli's obligation to construct the new facility should be excused because (1) Audi and Volkswagen acted in bad faith by failing to allocate to Wackerli a sufficient number of vehicles to make the facility construction economically viable, and (2) Volkswagen and Audi's bad faith vehicle allocation policies in performance of the Settlement Agreement inhibited or rendered impractical or impossible the performance of the Settlement Agreement by Wackerli.  Wackerli, as the party claiming breach of the dealer agreements or, alternatively, excuse for non-performance of the dealer agreements, based on Audi and Volkswagen's alleged bad faith, would be assigned the burden of proof on these claims under the common law. *Cogeneration*, 9 P.3d at 1213.

In sum, the Court agrees with Volkswagen and Audi: "Had the Idaho Legislature intended to abrogate the common law presumption that Wackerli has the burden of proof concerning the issue of good faith or the common law rule that wrongdoing is never presumed, it would have had to do so by express statutory language." *Defs'*
*Supplemental Br.* at 4, Dkt. 25.  The Court therefore concludes that the hearing officer correctly assigned the burden of proving lack of good faith on Wackerli.

Moreover, the Transportation Department's interpretation of the statute is entitled to substantial deference.   The Idaho Supreme Court has adopted a four prong framework to determine the correct level of deference to give to agency statutory construction: 1) whether "the agency has been entrusted with the responsibility to administer the statute at issue"; 2) whether "the agency's statutory construction [is] reasonable"; 3) whether "the statutory language at issue []expressly treat[s] the precise question at issue"; and 4) "whether any of the rationales underlying the rule of deference are present." *Simplot Co*., 820 P.2d at 1219.

Here, the Transportation Department has been entrusted to administer the Idaho motor vehicle statute, in particular issues related to dealer protests. Second, as already discussed, the Court believes the Department's construction of the statute was reasonable. Third, the statutory language does not expressly treat the precise question here: while it addresses which party carries the burden of proving good cause, it is silent on which party carries the burden of proving good faith.  Finally, the Court finds that at least one of the rationales for agency deference are present – i.e., the Transportation Department's

interpretation of the statue is the most practical, and no cogent reasons exist for denying the Department deference in this case.  Fundamental common law principles and statutory construction principles support the Department's construction of Idaho Code §1614(6).

Finally, the Court questions whether it would have made any difference if the hearing officer had assigned the burden of proving good faith to Audi and Volkswagen. The Court's own review of the record supports the view that Volkswagen and Audi proved that the proposed termination of the dealer agreements is based on good cause *and* good faith.  *See, e.g.,Wagner v. Land Rover North America, Inc.*, 539 F.Supp.2d 461 (D. Mass 2008) (holding that franchisor's demands that the dealer comply with the facility obligations from its letter of intent did not constitute coercive conduct under the dealer statute).

Indeed, the Court does not see how good cause to terminate can exist without good faith.  Logic dictates that a manufacturer that has proved good cause to terminate, by implication, has also shown that it acted in good faith.  As already discussed, the requirement that Wackerli build a new facility after displacing Volkswagen and Audi from the approved facility is a reasonable contract term to which Wackerli assented. Accordingly, Volkswagen and Audi's attempt to enforce this term – even without providing a written guarantee to supply inventory Wackerli did not bargain for when negotiating the contract – does not constitute bad faith.

In this same vein, the Court finds no fault with the hearing officer's conclusion that Wackerli should have negotiated an allocation guaranty in connection with the facility commitment if that is what it needed to perform its end of the bargain. This conclusion accords with the law on impracticability, which makes performance of a contract impracticable only if "a party's performance is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made." *City of Boise v. Bench Sewer Dist.*, 773 P.2d 642, 646 (1989).

Given the narrow and deferential standard of review, and the hearing officer's thorough decision finding good cause for termination, the Court concludes that Wackerli has not met its burden of demonstrating a likelihood of success on the merits. It therefore fails to meet the threshold for a stay pending appeal. Accordingly, Wackerli's motion is denied.

## ORDER

**IT IS ORDERED:**

1.    Plaintiff B.A. Wackerli, Co.'s motion to remand (Dkt. 19) is DENIED.

2.    Plaintiff B.A. Wackerli, Co.'s motion to stay (Dkt. 20) is DENIED.

DATED: August 13, 2012

B. Lynn Winmill
Chief Judge
United States District Court